**Wytheville.**

ENGLEBY & OTHERS v. HARVEY.

JULY 23, 1896.

Absent, Harrison, J.

1. CONTRACTS—*Entire Promise—Statute of Frauds—Case at Bar.*—Where a verbal contract is entire, and relates in part to a matter which renders it necessary under the statute of frauds that the promise should be in writing, the whole promise is void. In the case at bar the promise which is relied on as the basis of the suit was made by an agent without evidence that he was authorized to make any such promise, or that it was at all within the scope of his duties or employment. Furthermore, it was the verbal promise of one to pay the debt of another. The evidence does not support the allegation that the two parties were partners, or joint contractors.

2. FRAUD MUST BE PROVED—*Innocence Presumed—Case at Bar.*—He who alleges fraud must, except in a particular class of cases, clearly and distinctly prove it. The law never presumes fraud, but the presumption is always in favor of innocence, and not of guilt. In the case at bar, the assignment by the sub-contractor to another of the amount coming to him under the contract, in order to enable the sub-contractor to raise money to carry on that and other jobs, furnishes no ground for a claim of an intended fraud on a lumberman whose debt had not been created at the date of the assignment, though, under a contract with the general contractor, the lumberman subsequently furnished him lumber which was used by the sub-contractor in doing the work.

Appeal from decrees of the Hustings Court of the city of Radford, pronounced October 12, 1894, and December 20, 1894, in a suit in chancery, wherein the appellee was the complainant, and the appellants and others were the defendants.

*Reversed.*

The bill in this cause was filed by Lewis Harvey, suing on behalf of himself and all other creditors of E. S. Jones and the American Bridge Company who might come into the suit and contribute ratably to the costs thereof. The bill charges that E. S. Jones, assignee of the American Bridge Company, had contracted with the city of Radford to build for the city a bridge and the approaches thereto for a stipulated price ; that Jones had subsequently contracted with the Bridge Company to build the superstructure and the Company had agreed to pay him " $6.00 per cubic yard for the masonry which formed a part of the superstructure, and $15.00 per thousand for all lumber necessary for the superstructure, which said Jones was to furnish."

The bill charges that Jones and the Bridge Company were partners in the construction of the bridge, and that the complainant had furnished them lumber of the value of $331.20 for the construction of the bridge and which was used therein ; that Landmen & Sadler had furnished them lumber for the bridge of the value of $384.00, which account had been assigned to the complainant, and that G. C. Carder had done work on the bridge to the amount of $34, which account had likewise been assigned to the complainant. The bill then sets out sundry assignments made by Jones and the American Bridge Company respectively of amounts coming to them under said contract, all of which are charged to have been without consideration and made with intent to hinder, delay and defraud complainant and other creditors in the collection of their debts, and that both Jones and the American Bridge Company and the partnership of Jones and the American Bridge Company were insolvent. It also charged that mechanics' liens had been filed for each of said lumber accounts. There are other charges in the bill, but they need not be here stated. The prayer was for an injunction to enjoin the payment of so much of the money as was necessary to pay the debts set out in the

bill ; that the assignments set out in the bill be declared
fraudulent and void ; that all proper accounts be taken and
the rights of all parties be adjudicated; that the mechanics'
liens be enforced, and that the court would " wind up this
whole bridge transaction." The necessary parties were
made defendants, and they answered denying all the mate-
rial allegations of the bill. The other facts sufficiently
appear in the opinion of the court.

*Penn & Cocke*, for the appellants.

*Gardner & Wharton* and *J. C. Wysor*, for the appellees.

RIELY, J. delivered the opinion of the court.

There is no evidence to sustain the allegation of the bill
that the American Bridge and Iron Company and E. S.
Jones were partners in the construction of the bridge for the
city of Radford, or in any part of the work; nor the conten-
tion that they were joint contractors.

The city of Radford advertised for bids to build a bridge
across Connelly's branch, and make the necessary excava-
tions and fills for the approaches to the same, and on April
27, 1893, it awarded the contract to the American Bridge
and Iron Company. Making excavations and fills not being
in its regular line of business, the Bridge Company on the
same day assigned its bid to E. S. Jones, which assignment
the city approved and ratified. The Bridge Company then
entered into a contract with Jones, as the general contractor
for the work, to do all the masonry and furnish the super-
structure of the bridge, for the sum of $13,450, which amount
Jones agreed to pay monthly, according to monthly estimates
made by the city engineer as the work progressed, less the
amount of the masonry, for which the Company agreed to
pay Jones at the rate of $6.00 per cubic yard. On May 12,

1893, the contract between the city and Jones, as assignee of the bid of the American Bridge and Iron Company, was reduced to writing and duly executed by them. It shows that he was the sole contractor with the city for the entire work, and was so recognized and treated by the city.

The claim of the appellee, Harvey, with the exception of the order of G. C. Carder on E. S. Jones for $31.05 for balance due him for day labor, the justice of which is not supported by any testimony, is for lumber furnished to and under contracts wholly with Jones. It was consequently not a debt due from the Bridge Company, but Jones alone was liable for it.

Harvey states in his deposition that after he had furnished a part of the lumber, he told the engineer of the Bridge Company, who was in charge of the erection of the bridge, that he would not furnish the balance of the lumber unless he was certain that he would get paid for it, and that the engineer told him to go on and furnish the lumber, and that he would get his money, as soon as the bridge was completed, "for the lumber furnished and to be furnished." G. W. Landmen, of the firm of Landmen & Sadler, who assigned to the appellee their claim, testified that, after his firm had furnished a part of the lumber under their contract with Jones and he had failed to pay for it, they became uneasy, and went to a man by the name of Lipscomb, the "boss" man for the Bridge Company in erecting the bridge, and that he told them to go on and furnish the lumber, and that they would get their money "for the lumber furnished and to be furnished." These statements of the engineer, and the man Lipscomb, were relied on to bind the Bridge Company to pay for the lumber.

In the first place there in no evidence that either the engineer or Lipscomb was authorized by the Bridge Company to make any such promise or agreement, or that it was at all within the scope of their duties or employment; and,

if not, the statements made by them fixed no liability on the Company to pay for the lumber.

If, however, such undertaking was within the scope of their authority or employment, it would nevertheless, not bind the Company. Jones was the sole contractor for the lumber, and he alone was liable for the payment of what had been furnished and that which was to be furnished. It was *his* debt, and in no respect that of the Bridge Company. The original liability was wholly his, and not to any extent or in any manner that of the Company. The contract for furnishing the lumber had in good part been performed, and the alleged undertaking was to pay for the lumber already furnished, as well as for that to· be thereafter furnished. The promise was not confined to the part of the debt to become due, but included also the part already due. It was simply a verbal promise to pay the whole debt. Where such promise is entire, as was the case here, and it relates in part to a matter which renders it necessary under the statute of frauds that the promise should be in writing, the whole promise is void. Jones was not a party to the undertaking, nor was his liability for the debt in anywise extinguished or reduced by it. His original liability remained unaffected. So that the promise relied on, if conceded to have been authorized, was simply an undertaking to pay, or see paid, the debt of another. Being purely a collateral undertaking, and not in writing, it was void under the statute. Code of Va. sec. 2840; *Noyes' Exor.* v. *Humphreys*, 11 Gratt. 636; and 3 Minor's Institutes (2 ed.), Pt. 1, pp. 180–81.

The American Bridge and Iron Company, after contracting with Jones to furnish and erect the superstructure of the bridge, in order to obtain money to carry on this and other work it had contracted for, assigned to Joseph T. Engleby, agent, on January 10, 1894, the sum of $1,000, to be paid out of the first estimate to become due to it on account

of said work, and, on January 17, 1894, assigned to him the residue of the money for which it had contracted to do the work. This was a plain and common business transaction, and furnishes no ground for the claim of an intended fraud on the appellee or his assignors, whose debts had not then been created, or the lumber even contracted for. The charge of fraud, which is made in the bill against the assignment, is not sustained by any testimony in the cause, and is denied by the answers.

The object of the writing referred to in the record as the "Osborne" agreement was, upon its face, to adjust a controversy that had arisen between the parties over the contract for the construction of the bridge, and the making of the necessary excavations and fills; to prescribe the manner in which should be distributed the balance of the money to be received for the work from the Mercantile Trust and Deposit Company, of Baltimore, from the sale of bonds of the city of Radford, which the city had issued to pay the cost of the said improvement; and to appoint an impartial person to receive the money, and pay it out in the manner prescribed. It is not easy to see how the agreement is affected with or is evidence of any fraud, and the record contains no evidence to prove that it was entered into for a fraudulent purpose.

It is a rule universally recognized, except in a particular class of cases within which this case does not come, that he who alleges fraud must clearly and distinctly prove it. The law never presumes fraud, but the presumption is always in favor of innocence and not of guilt. *Hord's Admr.* v. *Colbert et al.*, 28 Gratt. 49; *Herring* v. *Wickham*, 29 Gratt. 628; *Crebs* v. *Jones*, 79 Va. 381; *Gregory* v. *Peoples*, 80 Va. 355; *Moore* v. *Triplett*, 23 S. E. R. 69; and Kerr on Fraud and Mistake, 382–84.

The case is one of hardship as respects the appellee, Harvey, and it will be unfortunate if he should lose his debt in consequence of the insolvency of Jones, but the court, be-

cause of the merit of his claim or the misfortune of the original debtor, cannot declare fraud where it is not shown to exist, nor impose a liability where none was ever incurred.

So much of the decrees of the Hustings Court as decide that the American Bridge and Iron Company is jointly liable with E. S. Jones for the payment of the debt of the complainant, and adjudge that John G. Osborne pay to J. C. Wysor, counsel for the complainant, the sum of $700 which should have been decreed to I. T. Engleby, under the assignments made to him, or withhold from him any other moneys to which he may be entitled under the assignments, must be reversed, and the cause remanded to the said court for further action in accordance with the views herein expressed.

*Reversed.*