# Richmond.

## BARLEY & OTHERS v. BYRD & OTHERS.

### NOVEMBER, 18, 1897.

1. SUIT TO ESTABLISH LOST DEED—*Evidence—Memorandum in Handwriting of Grantee's Attorney.*—In a suit to set up a lost deed made a century ago, a memorandum in the handwriting of the grantee's attorney, found amongst the papers of the grantee, stating that the lands had been granted to the grantor, and by him and wife conveyed with general warranty to the grantee, is not in itself evidence of the execution of such deed; nor is such memorandum admissible as a declaration against interest in a suit where no relief is sought against the attorney, or his representatives; nor is it admissible as a part of the *res gestae*, as the transaction to be explained or proved is the execution of the deed, and the memorandum neither accompanies nor explains the fact in issue.

2. EVIDENCE—*Deed not Properly Authenticated or Recorded—Copy of a Copy.*—Where an original deed conveying lands lying wholly in Virginia is admitted to record outside of this State, upon proof and authentication wholly insufficient to have admitted it to record in Virginia, and a copy thereof is subsequently admitted to record in a county in Virginia where a part of the land conveyed lies, and the absence of the original deed is nōt accounted for, a copy from the copy so admitted to record is not admissible in evidence to prove the recitals in said deed.

3. SUIT TO ESTABLISH LOST DEED—*To Whom Land Charged for Taxes—Copies from Auditor's Office—Intermediate Conveyances Unaccompanied by Possession—Case at Bar.*—In a suit to establish a deed alleged to have been made a century ago, and lost, neither the certificate of the auditor showing that the lands were charged to the grantee for a great number of years after the date of the alleged deed, nor any number of intermediate conveyances, however numerous, from those claiming under the alleged grantee, unaccompanied by possession or other circumstance, can serve to establish the execution of such deed. In the case in judgment the evidence of possession in appellants amounts to nothing so far as it affects the rights of other parties to the controversy.

4. SUIT TO ESTABLISH LOST DEED—*Proof of Former Existence.*—Courts of equity, in exercising their jurisdiction to set up a lost instrument which is to constitute a muniment of title, require strong and conclusive proof of its former existence, its loss, and its contents.

Argued at Staunton.    Decided at Richmond.

Appeal from a decree of the Circuit Court of Bath county pronounced April 28, 1897, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*James R. Caton* and *John Critcher, Jr.,* for the appellants.

*McAllister & McAllister, R. L. Parrish, Elder & Elder* and *Charles P. Jones,* for the appellees.

KEITH, P., delivered the opinion of the court.

This is a bill filed in the Circuit Court of Bath county by Barley and others, who claim to be the owners of 41,000 acres of land located in Bath, Highland, Rockbridge and Augusta counties, granted in December, 1795, by the Governor of Virginia to Thomas Wilson, a title to which, it is alleged, by sundry intermediate conveyances, has become vested in the plaintiffs. It is averred that there is a cloud upon that title by reason of the loss of a certain deed from Thomas Wilson and wife to James Wilson executed some time between the 30th of December, 1795, and January 27, 1797, and the object of this bill is to have a decree setting up the said deed, and for further and general relief in the premises. With this bill a large number of exhibits are filed. The heirs of Thomas Wilson, the alleged grantor in the lost deed, did not answer the bill, but answers are

filed by quite a number of the defendants denying that the com-
plainants are owners of the land in the bill mentioned, and a'ver-
ring that they, the respondents, are in possession of large parts
of the said tract of 41,000 acres which they hold adversely to
the complainants under titles derived through grants from the
Commonwealth.    Depositions were taken on behalf of the
plaintiffs, but no evidence was submitted on the part of the
defendants, and the cause coming on to be heard upon the bill,
exhibits, answers of certain defendants, and other evidence, the
Circuit Court of Bath county dismissed the bill; and thereupon
Barley and others applied for and obtained an appeal from one
of the Judges of this Court.

The appellants filed their bill under sections 2361, 2362,
2363 and 2364 of the Code, which are as follows:

Sec. 2361. "If any record or paper constituting a link in the chain of
title to any tract or parcel of land in this state, has been or shall
be lost or destroyed, and no authenticated copy thereof can be found,
it shall be lawful for the person or persons, claiming the ownership of
such tract or parcel of land to file in the circuit court of the county,
or circuit or corporation court of the corporation, in which said land,
or the greater part thereof, is situated, a bill in equity, setting forth
the circumstances of such loss or destruction, and giving a history of
the title and possession of such tract or parcel of land, and a full
description thereof, with the names of the persons in possession of
the co-terminous parcels.  All persons appearing to have an interest
in such lands, or to be in possession thereof, or of any adjoining parcel,
shall be either plaintiffs or defendants, and the proceedings to mature
the cause shall be the same as in other suits in equity, except that
in every case there shall be an order of publication, setting forth
briefly the purpose of the proceeding, and notifying all persons inter-
ested to appear and look after their interests."

Sec. 2362. "When the suit is ready for hearing, the court may
make an order of survey, to be executed by such person as the court
may appoint, requiring a complete survey and plat of the land in
question to be made and returned, showing its connection with co-ter-
minous tracts, and any other circumstances necessary for its thorough
identification."

Sec. 2363. "Upon the return of such survey and plat, testimony may
be taken as in other suits in equity, but no notice of the taking of

such testimony need be given to any defendant who has not appeared and answered the bill."

Sec. 2364. "If, upon such survey and plat, and upon the other facts in the cause, the court shall be clearly satisfied of the ownership of the tract or parcel of land shown by such survey and plat, and that there is no controversy about such ownership, it shall certify the same of record, and shall make such order concerning the costs as may seem proper."

In the argument before this Court it was contended that, if the appellants were not entitled to relief by virtue of these sections, they had made out a case which entitled them to relief under the general jurisdiction exercised by courts of equity to set up lost papers. The evidence relied upon to establish the execution and contents of the deed from Thomas Wilson and wife to James Wilson, the loss of which is alleged, consists of—

First. A receipt or memorandum signed by Bushrod Washington, who was the attorney at law of James Wilson, the grantee in the said deed. This memorandum is dated March 10, 1796, and is as follows:

"44,000 acres in Bath county; 35,000 acres in Bath county; 30,000 acres in Bath county; 41,000 acres in Bath county; 40,000 acres in Randolph county; 57,000 acres in Wythe county: total 247,000," and underneath this "221,458, making an aggregate of 468,458 acres." Then written, it may be conceded in the handwriting of Washington, is the following statement: "These lands are granted to Thomas Wilson, and by him and wife conveyed with general warranty to James Wilson, of Philadelphia, to be recorded in the General Court in June next."

It appears that this memorandum was found among the papers of James Wilson which were in the possession of his last surviving heir, Miss Hollingsworth of Philadelphia, who, many years before her death, placed it, together with other papers of James Wilson, in the hands of Galloway C. Morris, her relative and business agent. The antiquity of this instrument and

its authenticity may be considered as established by the proof in the cause.

Second. The recital contained in the deed of trust made by James Wilson and wife to Thomas Fitzsimmons and others for the benefit of Wilson's creditors. This deed contains a recital that the land is the same as that described in the patent of Thomas Wilson recorded in the Land Office at Richmond, and that the said land was conveyed by Thomas Wilson and wife to James Wilson in fee simple by deed duly executed.

Third. The certificate of the Auditor of Public Accounts showing that the said lands were assessed to James Wilson as early as 1801, and that the State taxes had been paid by those claiming under James Wilson and his grantees.

Fourth. A line of conveyances from 1797 to the present time, claiming title to the said land under the deed sought to be established—the land having been several times during the period named the subject of judicial sale.

Fifth. The actual possession of the land by the petitioners from 1889 to the present time, claiming title under the alleged lost instrument, and the further facts, that the heirs of Thomas Wilson (who were made parties to this suit) have never asserted any title thereto; that there is no proof of any holding of said land adversely to the petitioners; and that only one patent of 41,000 acres of land in Bath county to Thomas Wilson ever issued.

We will examine this evidence in the order in which it has been set out.

The memorandum signed by Bushrod Washington is relied upon, first, as an entry made by one since deceased in the course of professional employment, Washington acting in the premises as the agent or attorney for James Wilson, and being a person capable of speaking as to the nature and character of the instrument. The question here is not as to the authenticity of this paper. That may be conceded. What is its effect as proof in this case against the defendants?

In the case of *Price* v. *Earl of Torrington*, 1 Smith's Lead-ing Cases, it was held that, "In an action for beer sold and delivered, in order to prove the delivery a book was put in con-taining an account of the beer to be delivered by the plaintiff's drayman, and which it was the duty of the drayman to sign daily. The drayman, who had signed the account of the beer delivered the defendant, being dead, the book was admitted in evidence on proof of his handwriting," and the doctrine of this case has been approved in Virginia. *Lewis* v. *Norton*, 1 Wash. 76; *Downer & Co.* v. *Morrison*, 3 Gratt. 350. But we agree with counsel for appellee that the rule in Virginia has never been extended beyond trades and businesses where it was the usual and ordinary custom to keep books in which entries of the daily business are regularly made. We have been cited to no such case, and we ourselves have been unable to find any such. It is conceded that the admission of such evidence is in derogation of the ordinary rules governing the admissibility of evidence, and rests, as it has been said upon "Moral necessity," and the operation of the exception is "limited to the character of the dealing to which the law has ascribed *prima facie* a desti-tution of the ordinary means of proof, viz.: the daily sale and barter of merchandise and other commodities; the performance of services and letting of articles of hire, and probably the pay-ment from time to time of money placed on deposit; circum-stances so frequent in occurrence and so trivial in their indi-vidual amount that the procurement of formal proof could not be expected, and would not compensate for the time necessary for the purpose." Were it conceded that Bushrod Washington was the attorney at law of James Wilson, we know of no authority or principle of the law of evidence which would impute to a memorandum made by him the effect which is claimed for the paper in question, which is, that his statement above quoted is in itself evidence of the execution of a deed from Thomas Wilson and wife to James Wilson conveying title from the grantors to the grantees of 41,000 acres of land.

It is claimed that the memorandum of Washington is admissible as a declaration against his interest, because he thereby admits the possession of the deed, receipts to James Wilson for it, and charges himself with its custody. If this were a controversy between James Wilson and Bushrod Washington, or those claiming under him, there might be force in this contention, but not under the circumstances of this case. Neither Bushrod Washington, nor any person in privity with him, is in any degree concerned in this litigation, or can in any degree be benefitted or prejudiced by his admission as such; and, as is pointed out by counsel for appellee in their brief, the memorandum does not in point of fact admit the possession of the deeds to be in Washington.

It is contended in the third place that this memorandum is evidence, because it is a part of the *res gestae;* that "it was a concomitant of the transaction, immediately connected with it, and explains it."

The transaction to be explained, or rather to be proved, is the deed from Thomas Wilson and wife to James Wilson, and the *"res gestae"* would be facts and circumstances attending its execution. The most that can be said of this memorandum is, that it is a statement made by Bushrod Washington that certain lands were granted to Thomas Wilson, and by him and wife conveyed with general warranty to James Wilson, but that statement is in no sense connected with the execution of the deed referred to. The written memorandum neither accompanies nor explains the fact in issue, which is, whether or not a certain deed from Thomas Wilson to James was ever executed, and to constitute a part of the *res gestae* it must be "so connected with the very transaction or fact under investigation as to constitute a part of it." *Haynes' case,* 28 Gratt. 946.

We are of opinion that the Washington memorandum viewed in any aspect does not tend to prove the execution of the deed from Thomas to James Wilson.

Next, as to the recital contained in the deed of trust of date January 29, 1797.

The original of this deed is not produced, nor is its absence accounted for. It appears to have been recorded in the city of Philadelphia, where none of the lands embraced in it were situated, upon proof and authentication wholly insufficient to have admitted it to record then or at any subsequent time in Virginia. This deed, thus insufficiently authenticated, was, as a matter of fact, recorded in Bath county, in 1858, and it is a copy from the records of Bath county which is now relied upon. There are cases in which copies of deeds properly attested for recordation, but recorded in a county where none of the lands conveyed in it are situated, and which were therefore not properly admitted to record in that county, have been received as secondary evidence.

In *Van Gunden* v. *Virginia Coal & Iron Co.*, 3 C. C. A., 294, a certified copy of a deed recorded in 1823 in a county in Virginia where a part of the land conveyed, though no part of that in controversy, was situated, was offered and admitted in evidence. It will be observed that in that case the deed was properly authenticated, that it was recorded in the county in which a part of the lands conveyed by it were situated, and it was admitted along with other evidence for certain purposes, which need not here be mentioned, the court cautioning the jury that it could not be considered as constructive notice.

But the case before us is wholly different. Here the deed, an alleged copy of which is relied upon, was never proved so as to entitle it to recordation in Virginia. It stands then wholly unsupported by evidence as to its authenticity, and it cannot be that a paper can be introduced as secondary evidence of the existence and contents of a lost instrument of which it is claimed to be a copy, when there is no proof of its authenticity as such.

The certificate of the Auditor of Public Accounts showing that James Wilson was assessed on the land book of Bath county for the year 1801 with taxes upon a tract of 41,000 acres of land, if admissible for any such purpose, is wholly inadequate to establish the execution and existence of a deed

from Thomas to James Wilson. Nor can evidence of intermediate conveyances, however numerous, from those claiming under James Wilson unaccompanied by possession, or any other circumstance, serve to establish the deed in question. Of the actual possession of the land by appellants, the proof is meagre, unsatisfactory, and wholly insufficient to affect in any degree the rights of the parties to this controversy.

The only evidence upon the subject is to be found in the deposition of Robert J. Thomas, who in answer to the question: "How long have you been in possession of the said land?" states as follows: "We bought the land in November, 1889. Early in 1890, we employed A. J. Turner, who lives near Longdale, Virginia, to search for iron ore on this tract of land, and he was so engaged at various times until the spring of 1891. In either January or February, 1891, we employed W. C. Craig, our agent, to look after the land, which he continued to do until Jos. Lawrence bought John Critcher's, Jr., interest, on or about February 1, 1892. Then E. L. Mattice had general supervision of the land, and on October 6, 1894, we appointed R. H. Terrell as our agent, who still has it in charge. And in putting our agents in charge we gave them instructions to do whatever was necessary to protect our interests in the property, and to exercise the rights of ownership over the said property. By our directions, Mr. Terrell posted about two hundred (200) of these notices over the land, one copy is herewith filed with these depositions, marked exhibit 'R. J. T.' No. 1, and therefore we have been in possession since 1889."

The notices referred to in this answer merely warn all persons "cutting timber, railroad ties, tan bark, or hauling the same, or in any manner trespassing upon the tract of land known as the Wilson survey, the boundaries of which have recently been defined by a survey ordered in the equity cause of *Barley et als.* v. *Byrd et als*," that they would be prosecuted to the full extent of the law. The sole act of possession, therefore, was the employment of Turner to search for iron ore, and

in this business he was engaged at various times in 1891. The suit was brought in May, 1892. Two years thereafter the agent, Terrell, posted the notice against trespassing, and this is the whole evidence as to the possession on the part of the appellants, and those under whom they claim. As affecting the rights of parties to this controversy, this proof amounts to nothing. See *Taylor* v. *Burnside*, 1 Gratt. 169, and *Overton* v. *Davisson*, 1 Gratt. 216.

Courts of equity in exercising their jurisdiction to set up a lost instrument, which is to constitute a muniment of title, require strong and conclusive proof of its former existence, its loss, and its contents. *Thomas* v. *Ribble*, 24 S. E. R. 241.

We are of opinion that the evidence presented in this record, such as it is, falls very far short of meeting these requirements. Nor do we think that the Circuit Court could, under section 2364, have with propriety certified that it was clearly satisfied as to the ownership of the tract or parcel of land shown by the survey and plat, and that there was no controversy about such ownership. It is true that much that is contained in the answers filed is of an affirmative character, and being unsupported by proof the answers are to that extent unavailing, but denying as they do, the whole equity of the bill, the plaintiffs were put upon proof of their case, and the defendants had a right to rely upon the weakness of the case disclosed by the plaintiffs. It cannot be said that the defendants have failed to create a controversy because they have refrained from introducing evidence to refute the case made in the bill, which is denied in their answers and is unsupported by sufficient proof, upon the part of the plaintiffs.

We are of opinion that there is no error in the decree of the Circuit Court, and it is therefore affirmed.

*Affirmed.*