## Richmond

DICKENSON AND OTHERS V. RAMSEY AND OTHERS.

November 20, 1913.

Absent, Whittle, J.

1. EQUITY—*Jurisdiction—Lost Instrument—Fraudulent Alteration—
   Proof Required—Case in Judgment.*—While courts of equity
   have jurisdiction to set up lost deeds and wills and to establish
   titles under them, the proof of the former existence, the loss
   and the contents of the instrument, should be strong and con-
   clusive before the courts will establish a title by parol testi-
   mony to property which the law requires shall pass only by
   deed or will. The same principle applies to an alleged altera-
   tion of a deed which would amount to a forgery. The law
   never presumes fraud, and it must always be clearly alleged
   and proved. The testimony in the case in judgment falls far
   short of the degree of proof which the law requires.

Appeal from a decree of the Circuit Court of Russell
county. Decree for the complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*Routh & Routh, Vicars & Peery* and *R. S. Graham,* for
the appellants.

*W. W. Bird,* for the appellees.

KEITH, P., delivered the opinion of the court.

The bill in this case is filed by the children of Eliza
Ramsey, and in it they set out the following case: That

Polly Ramsey, their grandmother, by deed dated July 25, 1884, conveyed to their mother, during her life, and at her death to themselves as her children, in fee, a tract of land containing one hundred and fifty acres, in Russell county, with reservation of a life estate to the grantor, and granting also a life estate to William Ramsey, the father of complainants; that the purpose of the said deed was, after the reservation of a life estate in Polly Ramsey, to convey the said tract of land to their mother for life, with a life .estate to their father in case he should survive their mother, and then to complainants, as the children of Eliza Ramsey, in fee simple absolute; that what purports to be this deed is of record in the clerk's office of Russell county, and a copy of it is exhibited as a part of the bill. The complainants charge, however, that this is not a true record of the deed as executed by their grandmother, Polly Ramsey, as this deed contains no reference to themselves as the children of Eliza Ramsey; that portion of the deed having been fraudulently blotted out after the death of their grandmother and before the deed was admitted to record. The bill alleges that the deed was altered by striking or blotting out of it so much as referred to the children of Eliza Ramsey and passed to them the fee simple estate in the land in remainder, and that the fraud was perpetrated for the purpose of enabling their father and mother to convey a fee simple in the land to the purchasers thereof. The bill further charges that after the deed had been altered, their father and, mother conveyed the land in dispute to divers persons, and these grantees and their alienees are made parties defendant.

The answers of the defendants deny every material allegation in the bill, and upon the issues thus made many witnesses were examined, the case was heard and the decree rendered in accordance with the prayer of the bill;

and is before us for review upon an appeal awarded by one of the judges of this court.

The law applicable to such cases has been recently and frequently the subject of consideration by this court.

In *Thomas* v. *Ribble,* 2 Va. Dec. 321, 24 S. E. 241, this court said: "Where the instrument rises to the dignity and importance of a muniment of title, every principle of public policy demands that the proof of its former existence, its loss and its contents, should be strong and conclusive, before the courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will. That courts of equity have the jurisdiction to set up lost deeds and wills, and establish titles under them, can certainly not be denied; but it is a dangerous jurisdiction, and so pregnant with opportunities of fraud and injustice that it will not be lightly exercised nor except upon the clearest and most stringent proof. . . . It is the policy of the law, adopted with a view to prevent frauds, that title to lands shall pass only by written instruments; and the difference is more in name than in fact between giving effect to a parol conveyance of lands and establishing a title to lands under an alleged lost deed, upon parol testimony of its contents and loss, unless the proof be clear and conclusive. Certainly the opportunities for fraud are just as great in the one case as in the other." See also *Barley* v. *Byrd,* 95 Va. 316, 28 S. E. 329.

*Thomas* v. *Ribble* has been cited with approval by this court in numerous cases, the most recent of which is that of *McLin* v. *Richmond,* 114 Va. 244, 76 S. E. 301.

The case before us is not that of a lost deed, but the charge is that the deed as originally executed has been so despoiled, mutilated and changed since its execution by the grantor as to amount to a forgery.

It is a fundamental principle of law that fraud must be clearly alleged and proven. Every presumption is in favor of innocence and not of guilt. *Engleby* v. *Harvey*, 93 Va. 445, 25 S. E. 225; *Shoemaker* v. *Chapman Drug Co.*, 112 Va. 612, 72 S. E. 121; *Johnson* v. *Lucas*, 103 Va. 36, 48 S. E. 497. But the citation of authority for so elementary a proposition is wholly superfluous.

To the same effect is the law as to lost instruments, and every consideration of policy which influences the courts to require clear and convincing proof in such cases applies with full force to the case before us.

There is no question as to the jurisdiction of the courts to grant the relief prayed for by plaintiffs, but the proof must be clear, cogent and convincing.

A careful examination of the testimony in this case satisfies us that it falls far short of the degree of proof which the law requires. There is no occasion to impugn the sincerity and veracity of the witnesses. They are ignorant people speaking of transactions which occurred more than twenty-five years ago. One of the principal witnesses, Mrs. Kiser, testified in chief that she had seen the original deed, of which that filed with the bill purports to be a copy, at her father's house, with whom it had been left for safe-keeping, and that the original deed was "to Eliza Ramsey, and to her children, and to William Ramsey for a life time estate." Upon cross-examination she says, in answer to the question, "Do you know or not whether the deed you saw is the one in controversy?" "I do not know it, but I believe it from what people say." Q. "You do not know, as I understand you, whether the deed you saw at your father's house is the one in controversy?" A. "No, sir, I do not know, but it appears to me that it must be that way." And again: "You do not undertake to say that the deed you saw was the same as the deed in controversy to-day?" A. "I do not. I do not know it, but I believe it awful strong."

Q. "How do you happen to believe it so awful strong?" A. "From what people say. Bill said it."

Another witness for the plaintiffs, Joseph Fraley, testifies that after Polly Ramsey's death, when negotiations were going on for a sale of a part of this land to one Hensdill, he heard the contents of this deed discussed, and that Hensdill was told by William Dickenson, with whom he advised with respect to the title, to take the deed back to Barnett, by whom it had been written, "and have it doctored on," for if he should buy it "them heirs would give him trouble, and that the deed was doctored and returned to Hensdill and Dickenson, and then Hensdill bought it." Barnett utterly denies that the deed was ever brought to him for such a purpose, and it is only adverted to as throwing light upon the general character of the testimony relied on. The testimony of both Barnett and Amburgey is very vague and indefinite, though they both say that by the deed as written Eliza Ramsey was to have a life estate and at her decease then to her children.

If we turn to the deed as recorded, it will be seen that after a lapse of twenty-seven years witnesses, however honest and intelligent (and these witnesses, however honest, were certainly not intelligent) might well be confused and mistaken with respect to its phraseology. The first clause of the deed recites that Polly Ramsey in consideration of the natural love and affection she has for her daughter, Eliza, doth grant, with general warranty, unto her a certain tract of land. The second clause describes the land conveyed, and then follows: "Yet upon the following conditions, to-wit: The said Polly Ramsey first reserves to herself a life interest in the above subscribed lands during her natural life, then the aforesaid lands go to Eliza Ramsey and her husband William Ramsey a life estate and full control of thereof in the land described above thereof, with all the appurtenances, forever." It may be that it was the in-

tention of the grantor that Eliza Ramsey and her husband should take only a life estate, and that the scrivener failed properly to express that intention; but that is not the case made by the pleadings, nor does the evidence support it, and still less does it maintain the theory of spoliation and forgery with that certainty which the law demands.

For these reasons we are of opinion that the decree of the circuit court should be reversed.

*Reversed.*