## CRAIG–GILES IRON CO. v. BROWNLEE et al.

(Circuit Court of Appeals, Fourth Circuit.   February 1, 1921.)

No. 1825.

1. **Public lands ⊕➡183—Evidence held to warrant finding that grant from the state was not proved.**

In ejectment, where plaintiff's title depended on a grant from the state, the record of which did not bear the signature of the Governor, evidence *held* to warrant a finding that plaintiff had not sustained the burden of showing the execution of the grant.

2. **Appeal and error ⊕➡1046 (3)—Ruling as to burden of proof immaterial, when court found weight of evidence was against plaintiff.**

That the District Court erroneously imposed on plaintiff the burden of establishing the execution of a lost grant from the state by conclusive proof was immaterial, where the court explicitly found that the weight of evidence was against the inference that the grant was ever executed.

3. **Lost instruments ⊕➡23 (3)—Degree of proof required stated.**

Evidence of the existence of an instrument conveying land alleged to be lost must not only be preponderant, but so strong and clear that the mind of the judge or jury rests with complete satisfaction on the conviction that the security of land titles will not be disturbed by a finding in favor of the existence of the alleged lost instrument.

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Action by the Craig-Giles Iron Company against Mrs. Lee Brownlee and others. Judgment for defendants, and plaintiff brings error. Affirmed.

W. J. Henson, of Roanoke, Va., and M. P. Farrier, of Pearisburg, Va. (Vinson & Thompson, of Huntington, W. Va., Williams & Farrier, of Pearisburg, Va., and Jackson & Henson, of Roanoke, Va., on the brief), for plaintiff in error.

W. B. Snidow, of Pearisburg, Va., and H. T. Hall, of Roanoke, Va. (Hall, Wingfield & Apperson, of Roanoke, Va., on the brief), for defendants in error.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WOODS, Circuit Judge. In this action of ejectment the plaintiff's claim of title begins with an alleged grant from the state of Virginia to George Chambers, dated January 21, 1796. Jury trial having been waived, the court found on the evidence that the plaintiff had failed to prove the grant to Chambers. This finding was fatal to the plaintiff's claim, and judgment was entered in favor of the defendants, without consideration of the other defenses made by them.

[1] The plaintiff could produce no original grant, but introduced the record of the land office of Virginia, in which was copied as a record the form of a grant, complete in every respect, except that it lacked the signature and seal of the Governor. It is not contended that the record of the seal was usual or necessary. The plaintiff, conceding that it was necessary to prove that the instrument appearing on the record

as unsigned had in fact been signed by the Governor, relied on this evidence as proof: Documents showing that all the formal steps requisite to obtaining the grant had been taken; procurement by Chambers of the land warrant and its record; official survey made by the county surveyor and returned to the land office; preparation by the registrar of the grant in the prescribed form; the custom and general duty of the Governor to sign the grants upon the completion of these proceedings; recording of the document in the book which the law required to be kept for the record of grants completed by the Governor's signature, not for the recording of blank forms; the presumption of fact that the registrar would not have recorded as a grant an unsigned form; the entry of a charge on the land warrant of the number of acres covered by the alleged grant; the entry of the land on the tax books of Botetourt county, the registrar being required to furnish to the commissioners of the several counties lists of the land grants for purposes of taxation; the failure of the registrar to find in the land office the original paper, signed or unsigned; the recital of the grant in a deed from Sarah A. Chambers to one Booth, in 1853, referring to the grant in detail, thus indicating that the grant was before the draftsman; and the sale by the state of the land for taxes as the property of the heirs of George Chambers.

The chief countervailing evidence relied on by the defendants against the inference that the grant was executed were: The fact itself that the paper as recorded by the registrar lacks the signature of the Governor; a notation on the margin of the record "Ex'd & del'd," and the cancellation of the words "& del'd" by a line drawn through them, as indicating that the words were canceled because the paper purporting to be a grant had not been delivered on account of the lack of completion by the Governor's signature; the finding on the record of only one other paper on which such cancellation is made on the margin; the payment of taxes by George Chambers on three other tracts granted to him and his failure to pay taxes on this land at any time; the plat itself as showing that the land as surveyed should not have been granted, because the breadth did not bear the proportion to the length required by statute as a condition for the issuance of a grant.

As to the inference to be drawn from the record of the unsigned form of a grant, the Virginia court lays down this rule:

"The paper of October 21, 1687, was admissible only as a memorandum from the colonial records, tending to prove that proceedings had been taken looking to an execution and issuing of a grant, to be followed up, if possible, by evidence tending to show that the grant, so contemplated and begun, was actually executed, issued, and delivered; but, standing by itself, the copy was a nullity as a grant, and proved nothing but its own abortive existence." Holloran v. Meisel, 87 Va. 398, 13 S. E. 33; Holleran v. Meisel, 91 Va. 143, 21 S. E. 658; Hudgins v. Simon, 94 Va. 659, 27 S. E. 606.

In the second report of the case first cited it was said that the presumption might be entertained by the jury that the grant had been signed from the production of the unsigned form and other facts and circumstances, in view of the improbability that land so near the seat of government had remained ungranted as late as 1887. But the land

involved in the case before us was wild mountain land, and the presumption from mere lapse of time that a grant had been issued to some one by the state, if it exists at all, is very weak.

The Supreme Court thus states the inference to be drawn from the record of an unsigned form of a grant standing alone:

"Again, it is said that the record of an instrument which the law requires to be recorded is prima facie evidence of the validity of the instrument. That is undoubtedly true, if the instrument recorded is apparently valid. The presumption arising from the record is, that whatever appears to have been done, actually was done. If the record shows a perfect instrument, the presumption is in favor of its validity; but, if it shows an imperfect instrument, a corresponding presumption follows. Here the instrument recorded appears to have been incomplete, and consequently it must be presumed to be invalid. This presumption will continue until overcome by proof that the instrument as executed and delivered was valid." McGarrahan v. Mining Co., 96 U. S. 316–323, 24 L. Ed. 630.

The colorless statement we have made is sufficient to show that the evidence made a serious issue of fact as to the preponderance for or against the inference of the signing of the grant by the Governor. A critical examination of the record book brings more clearly into view cogent reasons against the inference that the paper prepared as a grant was signed. A very large number of grants had been recorded with the Governor's signature, and the recording was constantly going on. It is altogether improbable that the person recording so many grants, and in the habit of copying the Governor's signature, would have omitted it in this instance, if it had been present in the original. If it was the custom to record the proposed grants before the signature of the Governor, and add his signature to the record after it was made on the original, the absence of the signature from any record would seem to indicate that the original had never been completed by the signature. The notation and the erasure show that for some reason the registrar or a clerk gave his attention to the record of this paper a second time after it had been recorded. If the original had been signed, it seems probable almost to the point of certainty that on the second examination of the record the registrar or his clerk would have observed the conspicuous and singular absence of the Governor's signature, and would have made the correction to correspond with the original.

It seems to us, therefore, the evidence affords abundant support for the conclusion of the District Court that the plaintiff had not sustained the burden of showing that the form of the grant had been signed by the Governor.

[2, 3] It is argued, however, that we are not bound by this finding of fact, because the District Court erroneously imposed upon the plaintiff the burden of establishing the execution of the grant by conclusive proof. To this contention there are two answers. In the first place, the District Court explicitly found the weight of the evidence to be against the inference that the grant had been signed. Second, we think that the District Court's statement that the execution of an instrument purporting to convey land alleged to be lost must be proved by clear and convincing or conclusive proof was correct. Simmons Creek Coal

Co. v. Doran, 142 U. S. 435, 12 Sup. Ct. 239, 35 L. Ed. 1063; Fudge v. Payne, 86 Va. 303, 308, 10 S. E. 7; Wright v. Wright, 124 Va. 114, 97 S. E. 358. This means in practical application, we think, that the evidence in proof of the existence of an instrument conveying land alleged to be lost must be, not only preponderant, but so strong and clear that the mind of the judge or jury rests with complete satisfaction on the conviction that the security of land titles will not be disturbed by a finding in favor of the existence of the alleged lost instrument.

The District Court found, not only that the evidence of the execution of a grant was not clear and conclusive, but that the weight of the evidence was against the inference that it had been signed. Both of these findings have ample support in the testimony, and the judgment of the District Court is therefore binding on us.

Stark v. Starr, 6 Wall. 402, 18 L. Ed. 925, and Barney v. Dolph, 97 U. S. 652, 24 L. Ed. 1063, do not support the position that in an action of ejectment compliance with all the conditions required by the Virginia statute for obtaining a grant is equivalent to the grant itself. Both cases were decided under special statutes relating to Oregon lands, and have no application here.

Affirmed.