## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### DUNNAVANT V. DUNNAVANT AND OTHERS.

#### January 11, 1917.

1. LOST INSTRUMENTS—*Deeds—Jurisdiction of Equity.*—Where an instrument rises to the dignity and importance of a muniment of title, every principle of public policy demands that the proof of its former existence, its loss and its contents, should be strong and conclusive, before the courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will. That courts of equity have jurisdiction to set up lost deeds or wills, and to establish titles under them, can certainly not be denied, but it is a dangerous jurisdiction and so pregnant with opportunities of fraud and injustice that it will not be lightly exercised, nor except upon the clearest and most stringent proof.

2. LOST INSTRUMENTS—*Deeds—Insufficient Evidence to Establish.*— A bill was filed by a son against his father and others to establish a lost deed by the father to the son, alleged to have been executed twenty-nine years before. There was an irreconcilable conflict in the testimony of the father and son. The testimony of the alleged draughtsman of the deed was unconvincing. The other circumstances surrounding the alleged transaction were improbable.

   *Held:* That the evidence was insufficient to show the existence of the deed.

Appeal from the Circuit Court of Henry county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Whittle* and *Whittle,* for the appellant.

*Gravely* and *Gravely,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

Richard A. Dunnavant filed his bill against Thomas W. Dunnavant, his father, and others, alleging that in November, 1885, his father conveyed to him two tracts of land in Henry county, one known as the Stacy Watkins tract, containing fifty acres, and the other as the Nancy Watkins tract, containing ninety-three acres, and that the conveyance has been lost or destroyed.

It is conceded by counsel for the appellees that the degree of proof necessary to establish a lost deed and its contents is correctly indicated in the case of *Thomas* v. *Ribble,* 2 Va. Dec. 321, 24 S. E. 241, which is relied upon by the appellant. That rule is there succinctly stated in these words: "Where the instrument rises to the dignity and importance of a muniment of title, every principle of public policy demands that the proof of its former existence, its loss and its contents, should be strong and conclusive, before the courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will. That courts of equity have jurisdiction to set up lost deeds or wills, and to establish titles under them, can certainly not be denied, but it is a dangerous jurisdiction and so pregnant with opportunities of fraud and injustice that it will not be lightly exercised, nor except upon the clearest and most stringent proof." This doctrine has been approved by this court in the following cases: *Barley* v. *Byrd,* 95 Va. 316, 28 S. E. 329; *Carter* v. *Wood,* 103 Va. 68, 48 S. E. 553; *Smith* v. *Lurty,* 108 Va. 800, 62 S. E. 789; *Johnson* v. *McCoy,* 112 Va. 580, 72 S. E. 123; *McLin* v. *Richmond,* 114 Va. 244, 76 S. E. 301; *Dickenson* v. *Ramsey,* 115 Va. 79 S. E. 1025.

These facts are undisputed: That Thomas W. Dunnavant acquired title to the two tracts of land involved in this controversy, the Stacy Watkins tract in 1871, and the

Nancy Watkins tract in 1883; that at the time of the alleged conveyance, he resided upon the Stacy Watkins tract with his wife and son, Richard A. Dunnavant (the claimant of the property, then about 24 years old), his daughter, Eliza Dunnavant (then about 22 years of age, who in April, 1913, married Kellam and left her father's home), and an adopted daughter. The appellant continued to reside upon the property, pay the taxes thereon and cultivate the land as the ostensible owner thereof, until, then being over 76 years old, in May, 1914 (having been born on the 19th day of January, 1838), he left the place and moved into Martinsville. On the 18th day of July, 1914, he sold and conveyed the two tracts of land referred to, to W. T. Deshazo and F. E. Smith, for the consideration of $1,500. The purchasers were willing to pay cash, but he told them he preferred to have the interest at six per cent. upon the $1,500 well secured, and so instead of paying cash they executed their bond for the purchase money. Since 1885, from the profits derived from his lands, he has acquired title to two other tracts of land.

He testified that he left his home because he was staying there most of the time by himself, and that his son would come in now and then, but that he told him either to stay with him or leave him because he could not stay there by himself, which however is denied by the son and daughter.

The conveyance to Deshazo and Smith led to this controversy, as the appellee, Richard A. Dunnavant, claimed, as has been above stated, that in September, 1885, his father executed a deed of bargain and sale to him for the same property, which has never been recorded, and has been either lost or destroyed.

He undertakes to sustain this contention by his own testimony, the testimony of his sister, Eliza, and of W. A. Dove, the alleged draughtsman of the deed. The testimony of Richard A. Dunnavant and of his sister, Eliza Kellam,

appears to be positive and definite to the effect that such a deed was executed in September, 1885; that the consideration therein stated was $500, but that no money passed and the real consideration was the past and future labor of the son on the farm. This deed, they say, was delivered by the father to the son, and by the son delivered to his sister for safekeeping, and she says she kept it in a trunk with other valuable papers until just before she was married and about to leave home in April, 1913, when she put it in another trunk upstairs along with other valuable papers, and, to use her own language, "locked them up, and hung the key to the trunk upstairs." It is not clear to us whether she meant that she hung the key upon the trunk containing the deed, or that she hung the key upstairs. They state that after this controversy arose they came back to the house to look for the papers and found that the trunk had been rifled, the papers scattered and that they were unable to find the deed referred to. Richard A. Dunnavant, in answer to a question asking him to explain why he let the deed remain off the records for twenty-nine years, in substance stated that he never thought anything more about it until his father left, that they all lived there as one, and that what belonged to one belonged to the other.

The testimony of W. A. Dove discloses that he was a notary public, just above twenty-one years old in September, 1885. Without indicating the date except to say that it was sometime during his term of office from 1884 to 1888, he says that he wrote a deed for Mr. Dunnavant at his (Dunnavant's) house; that he does not know who was present, but thinks Mr. Dunnavant and his family were; that Mr. Richard Dunnavant was the grantee; that he thinks the deed conveyed two tracts of land known as the Watkins tracts; that he thinks the consideration was $500; that he always wrote deeds with a general warranty of title, and does not think he deviated from this custom when he wrote

this deed; that it was an absolute fee simple deed; that he does not know whether Mr. Thomas Dunnavant's wife signed the deed or not, that she was living at that time, but he thinks she did not sign it. In response to a question as to whether he could state by what means the two tracts of land were described in the deed, he says: "I think one of them was called the Stacy Watkins tract, I do not remember the other, further than the Watkins tract." When asked whether or not there was a seal or scroll by way of seal to the deed, he replied: "I do not remember; but I never did write one without placing it there." He says the deed was acknowledged before him as notary public and turned over to Mr. Richard Dunnavant, and that the deed was written and the acknowledgment taken at the request of Mr. Thomas Dunnavant. On cross-examination, this question and answer appear: "You could not undertake to be clear and positive as to the contents of the deed that you prepared for the Dunnavants twenty-nine years ago, could you? A. I could not, sir, except that the consideration was five hundred dollars, and I am clear on that point." He further says that it was a clear deed; that he knows of no conditions therein; that it was an absolute deed; that he thinks, but is not sure, that the deed was sealed; that he did not know that a seal was necessary; that he cannot be positive that the deed was sealed, except that it was his custom; that he is quite sure it mentioned the number of acres, but does not remember the number; that he does not remember the date of the deed; that he does not remember whether it conveyed all of the lands Mr. Thomas Dunnavant owned or not. On re-examination he was asked whether or not his recollection is clear that it conveyed two tracts of land known as the Watkins tracts, and he says: "I think that is correct, sir. It conveyed two tracts of land, known as the Watkins tracts of land."

Upon the other hand Thomas W. Dunnavant denies in the most positive and definite way that he ever executed such a deed, and explicitly denies each and all of the material facts and circumstances testified to by the three witnesses above referred to, introduced to sustain the claim of his son.

It appears from the testimony of Dr. J. Beverly Deshazo, that in a conversation he had with Richard A. Dunnavant, he asked him if he had any claim or any papers to prevent his father from deeding any of his land away, and he was told by him that he did not, and that he expected his father to go through all his property; and it also appears from the testimony of this witness that Thomas W. Dunnavant shortly before this time had a will properly executed in which the property in controversy was devised to the appellee for life and then to his adopted daughter, Mrs. Roberts, which he learned had been destroyed.

There are other collateral facts adduced in evidence by both parties to the controversy, and other conflicting testimony, but the above we regard as the pertinent and controlling evidence in the case.

So that there is an irreconcilable conflict in the testimony of the parties interested, the unconvincing testimony of the alleged draughtsman of the deed, and no circumstance corroborating the claim of the appellee, upon whom the burden of proof rests.

A fair consideration of this testimony falls very far short of convincing the impartial mind either of the existence or contents of the deed in question. It may be fairly said that it leaves the mind in a state of doubt and uncertainty. The improbabilities of the transaction, however, are very great indeed, for no sufficient explanation is given of the silence of Richard A. Dunnavant and his sister as to the deed and his claim of ownership thereunder until they heard that their father had sold, or was about to sell, the property, and no sufficient motive is assigned for the preference of the

son by his father in 1885, at the time the alleged conveyance was made. It then constituted the entire real estate of the father. At that time his mother and single sister were living and his father was in the prime of life. Another improbability is that a paper so valuable should have been hidden away for twenty-nine years and be finally left in a trunk with the key apparently accessible to any one who desired to take possession of it.

The law requires, in such cases, that the proof shall be strong and conclusive, as to the former existence of the paper as well as of its loss and its contents, and we are of opinion that the proof in this case is weak, uncertain, improbable and inconclusive; and, therefore, that the decree of the court below is erroneous and must be reversed, and this court will enter a decree dismissing the bill.

*Reversed.*