# Wythebille

ELLA GIBBONS, ET ALS. V. CHARLES J. REW, ET ALS.

June 13, 1935.

Present, All the Justices.

The opinion states the case.

*Mapp & Mapp, Ernest Ruediger* and *Herbert Barnes,* for the appellants.

*Gunter & Gunter* and *Stewart K. Powell,* for the appellees.

GREGORY, J., delivered the opinion of the court.

This suit was instituted for the purpose of establishing the will of Mary T. Rew, who died on the 27th of March, 1933. The appellants, who were the complainants below, were the nephews and nieces of Mary T. Rew and the ap-

pellee, Charles J. Rew, was her son. It was alleged that the will was lost, destroyed or suppressed by the son, Charles J. Rew, or his wife, Lola Rew, who is the other appellee. The lower court granted an issue out of chancery and a jury was impaneled to decide, "first, whether Mary T. Rew died testate and second, if she did die testate, whether the will of the said Mary T. Rew had been lost, destroyed or suppressed and third, what was her correct last will and testament." After all of the evidence of the complainants had been introduced and before any evidence of the defendants had been offered, the court sustained a motion of the defendants to strike the complainants' evidence and the jury brought in a verdict for the defendants. This action of the court in striking the said evidence is the error assigned here.

The sole question presented is whether or not the evidence introduced was sufficient to carry the relevant issues to the jury. The trial court thought it insufficient.

The evidence discloses that Mrs. Rew sought the services of Mr. G. Walter Mapp, an attorney, for the purpose of making her will. In response to her request, he and his stenographer, Miss Virginia Bull, met Mrs. Rew in the director's room of the Parksley National Bank, on February 26, 1931, and at that time and place, after more than an hour's conference, Mr. Mapp dictated the will to Miss Bull who transcribed it in a short time. It was then read to Mrs. Rew and she approved it. At this time Mr. Mapp, Mrs. Rew and Miss Bull were the only persons present. The will was written on three sheets of paper. Mrs. Rew then requested Miss Emma Parsons, assistant cashier, and Clyde Figgs, teller of said bank, to witness her will. They complied with her request and duly witnessed the will after it had been properly executed by Mrs. Rew. A former will of Mrs. Rew was revoked and destroyed.

Mrs. Rew requested Mr. Mapp to see to it "after she was gone" that the will which she had just executed was placed on record. She then gave her will to Miss Parsons, the assistant cashier, who upon Mrs. Rew's request placed it

among the bonds and other papers of Mrs. Rew which were kept by the bank in a safe in the vault of the bank. These papers were in one package and the will was bound with them.

A few days later Mrs. Rew desired to make a minor change in her will. Mr. Mapp and Miss Bull met her the second time in the bank at Parksley and this is Mr. Mapp's account of what took place:

"Q. What I was after, Mr. Mapp, did you make a change in the will after it was first written?

"A. Oh, that change, I thought I had covered that. Yes, she either saw me or sent for me or had me phoned for. She did that very frequently until this was straightened out. That there was one minor change that she wanted to make. I took Miss Virginia, after letting her know what time I would be there. One afternoon we rode up there, made that change. It was just a very few days, very short while after the will was written. To make that change, as I recall it, Miss Virginia would remember that better than I would, it was only necessary to take out the middle sheet. While this was copied on two if it is extended out, to take out the middle sheets, made that change. She reacknowledged the will, signed that page again. Had the same witnesses and that was added and the will again given back to Miss Emma Parsons.

"Q. And these two witnesses again went through the same procedure as before?

"A. The same thing. I know the law in regard to acknowledging wills. Had it strictly complied with. I was present at both times. So was Miss Virginia. The five of us being present."

Miss Bull testified that when the change was made it became necessary to re-write one page of the will but she could not remember which page was re-written. Witness Figg said he thought it was the second page that was re-written.

After the change had been made in the will and it had been re-acknowledged by the testator and again witnessed

by the same witnesses, it was placed back in Mrs. Rew's package of papers in the safe in the vault by Miss Parsons. It there remained until after the death of Mrs. Rew.

In the latter part of 1932 Mrs. Rew was taken sick and compelled to remain at home until her death on March 27, 1933. Some two or three weeks before her death Mrs. Rew requested Miss Parsons to have a copy of her will made and that she give it to Mr. Mapp. This request was complied with and a copy of the will was made and turned over to Mr. Mapp.

On April 27, 1933, about a month after Mrs. Rew's death, Mr. Mapp wrote the appellee, Charles J. Rew, that his mother, Mrs. Rew, had left a will and suggested to him that he and any others interested come to the courthouse on a certain day and have it probated. Mr. Rew made no reply to this letter but on April 28th, he went to the bank at Parksley and required the cashier to turn over to him all of his mother's papers among which was the will. The papers were taken from the safe in the vault and both the cashier and Miss Parsons requested Mr. Rew to open the papers so they could be checked but he refused to open the package. He carried them away.

On July 31, 1933, Charles J. Rew qualified as administrator of the estate of his mother, giving the required bond and on August 2, 1933, he gave notice to the said bank of his intention to withdraw from the bank $6,200 and interest which was there to the credit of the estate of Mrs. Rew. Whereupon the present suit was instituted and a restraining order was entered prohibiting Mr. Rew from withdrawing the money from the bank or disposing of the securities belonging to the estate.

The copy of the will which had remained in the possession of Mr. Mapp was introduced in evidence. It bore the name of Mrs. Rew on each of the three pages and on the last page appeared the attestation clause signed only once by Emma P. Parsons and Clyde P. Figgs as witnesses to the will. The appellees contend, and the court below so held, that inasmuch as witnesses Mapp and Figgs testified that

the change was made in the second sheet and that only one attestation clause duly signed appeared at the conclusion of the will, that this fact cast so much doubt upon whether the will had been actually executed in accordance with the statute after the change was made that it would not have supported a finding by the jury that Mrs. Rew died testate.

The witnesses to the will, Miss Parson and Mr. Figgs, testified that the will was re-acknowledged by Mrs. Rew after the change was made and that they witnessed it for the second time signing their names as witnesses. Mr. Mapp and Miss Bull testified positively upon this point, saying that the will, after the change, was again acknowledged and witnessed. Mr. Figgs upon cross-examination said he was not sure whether he signed as a witness twice but that he was sure that Mrs. Rew acknowledged the will twice. Opposed to this testimony that the will was legally executed after the change is the copy of the will itself wherein the concluding portion bears the signatures of the testator and the witnesses only once instead of twice as testified to.

The degree of proof required to establish a lost will is correctly stated in the brief of the appellees. Proof of its former existence, its loss and its contents should be strong and conclusive. *Dunnavant* v. *Dunnavant*, 120 Va. 301, 91 S. E. 138; *Wright* v. *Wright*, 124 Va. 114, 97 S. E. 358. Under the facts and circumstances of this case, we are of the opinion that the appellants are entitled to have the jury pass upon the evidence, which we think is sufficient to carry the case to them for their decision. The decree is reversed and the cause remanded.

*Reversed and remanded.*