# Richmond

## CHARLES BOWERY, ET ALS. V. PEARL LILLIAN WEBBER.

January 18, 1943.

Record No. 2614.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Roscoe P. Greenway*, for the appellants.

*Robert Lewis Young* and *Edward P. Simpkins, Jr.*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

Pearl Lillian Webber filed her bill in the court below seeking to establish as the last will and testament of Annie J. Livesay, deceased, a writing dated May 27, 1939, in which the complainant was named as the executrix and sole beneficiary. The bill alleged that Annie J. Livesay had died on June 12, 1940, without having revoked the will, but that the instrument had become lost or misplaced. '

Those persons, all adults, who would have been the heirs and distributees of Annie J. Livesay, had she died intestate, were named as defendants.

After a consideration of the evidence taken by deposition, the lower court entered a decree adjudicating that it was sufficient to establish the will, ordering it to be recorded as such, and allowing the complainant to appear and qualify as executrix. From this decree the heirs and distributees have appealed claiming that the evidence is insufficient to sustain the finding and decree of the court below.

The writing of the will, its contents, execution, and attestation in proper form were proved beyond question. John W. Fussell, a member of the Richmond Bar, testified that pursuant to the request of Mrs. Livesay he drew for her a will leaving all of her property to "her daughter, Mrs. Pearl Lillian Webber," who was therein named as executrix. This will, he further testified, was signed by the testatrix on May 27, 1939, and was signed by him and Mrs. Myrtle K. Reynolds, as attesting witnesses, in the proper form and manner. Mr. Fussell said that while he did not retain a copy of the will, he had used that of another client as a form, and from this he was able to reconstruct the precise

language of the Livesay will together with the attestation clause. After the will had been executed and witnessed in the proper manner, Mr. Fussell immediately delivered it to Mrs. Livesay.

The testimony of Mr. Fussell as to the form, contents, execution and attestation of the will is fully corroborated by that of Mrs. Reynolds, the other attesting witness.

After Mrs. Livesay's death, despite a thorough search, no trace of the will could be found.

■ While the appellants admit that the evidence which we have related is sufficient to establish the execution and contents of the will, they invoke the well-established presumption of law that where a will, known to have been executed and the contents of which are proven, is last traced to the possession of the testator, and is not found upon search at his death, it is presumed to have been destroyed by him with the purpose of revoking it,* and that the evidence adduced and relied on by the appellee is not sufficient to overcome this presumption.

■ In a number of cases we have said that the evidence to overcome the presumption of the revocation of a will must be "strong and conclusive." *Gibbons* v. *Rew*, 164 Va. 339, 343, 180 S. E. 153, 155; *Shultz* v. *Jones*, 168 Va. 24, 190 S. E. 91. In our opinion the evidence adduced by the appellee meets this test.

The record shows that when Pearl Livesay was nine days old her mother died and she was taken to the home of her paternal grandfather, George W. Livesay, and his second wife, Annie J. Livesay, where she was reared by them as their daughter. This couple had no children of their own. Not until she was eleven or twelve years old did Pearl know that Mrs. Livesay was not her mother. After the death of the grandfather, which occurred about this time, Pearl continued to make her home with her grandmother until her (Pearl's) first marriage at the age of twenty-two.

---

*See *Jackson* v. *Hewlett*, 114 Va. 573, 576, 77 S. E. 518; *Shacklett* v. *Roller*, 97 Va. 639, 640, 34 S. E. 492.

She was subsequently married to her present husband. After Pearl's marriage the grandmother lived some time with her and her husband and some time elsewhere, but in the same neighborhood. For the last year preceding her death Mrs. Livesay made her permanent home with her granddaughter, by whom she was nursed and cared for in her last illness.

It conclusively appears from the testimony of a number of disinterested witnesses who were intimate with Mrs. Livesay and her granddaughter through all of these years, that the affectionate relationship of mother and daughter continued down to the time of Mrs. Livesay's death in June, 1940.

It likewise conclusively appears from the testimony of disinterested witnesses that Mrs. Livesay repeatedly stated to her intimate associates that she desired and intended to leave all of her property to her granddaughter. Moreover, after the will had been written and executed, in May, 1939, Mrs. Livesay declared to intimate friends that she still had it in her possession, and that under its terms she had left all of her property to Mrs. Webber. She so told Miss Myles who boarded in the Webber home during the winter of 1939 and 1940. She made this statement to Dr. Bailey, her physician, within six weeks of her death. Just three weeks before she died she told Mrs. Reynolds that she still had the will which Mrs. Reynolds had witnessed and in which Mrs. Webber was the sole beneficiary.

In contrast to this evidence of affection and testamentary intent for and toward her granddaughter is the total lack of evidence of any such affection for or toward any of the appellants, who are the children and grandchildren of Mrs. Livesay's two deceased sisters. Although most of these parties lived in or near Richmond, not a single one of them testified. None laid claim to the affection and testamentary intent of Mrs. Livesay, and none contradicted the claims of Mrs. Webber.

Neither does the record disclose any incident occurring after the execution of the will in May, 1939, which would have induced Mrs. Livesay to revoke or change her will.

Furthermore, it appears that Mrs. Livesay left two policies of life insurance, on which she paid the premiums down to the time of her death. These policies were payable to Mrs. Webber who was therein described as her "daughter."

Only two witnesses testified for the appellants. Mrs. Annie L. Dawson testified that, "about nine years ago" Mrs. Livesay told her that she had made her will and had left nothing to Mrs. Webber. This testimony is so manifestly lacking in probative value on the issue of the revocation of the will subsequently made in 1939 that it merits no discussion. It is not mentioned in the appellants' brief.

Armistead T. Harvie, who is engaged in the real estate business in Richmond, testified that he had known Mrs. Livesay since 1911, and that during the four years preceding her death he was collecting for her deferred payments on a piece of real estate which she had sold through him in 1936. His observation was that the affectionate relationship which had existed between Mrs. Livesay and her granddaughter somewhat cooled after Mrs. Webber's marriage to her present husband about twenty years ago. Since then he had heard Mrs. Livesay say that she did not intend leaving her granddaughter anything. But this declaration he admitted was long prior to the execution of the will in May, 1939.

That portion of the testimony of this witness most favorable to the appellants is his statement that on June 20, 1939, Mrs. Livesay called at his office and received a check for moneys which he had collected for her, and that at that time she asked him to write her will. He told her that he was unable to do so and referred her to either of two well-known attorneys in Richmond.

On direct examination Harvie fixed the date of this interview as June 20, 1939, because, he says, it was the last time he delivered a check to Mrs. Livesay in person. He thought that he had delivered the check to her in person because his file lacked the usual carbon copy of a letter of transmittal which he customarily sent when checks were mailed.

But it likewise appears from his testimony that prior to this time Mrs. Livesay had been to his office on many occa-

sions, and he admitted, on cross-examination, that he might have been mistaken as to the date. This, we think, must be the case. It seems highly improbable that having had her will written in a satisfactory manner by Mr. Fussell, a lawyer who was recommended to her by her intimate friend, Mrs. Reynolds, as the record shows, Mrs. Livesay, within thirty days, would have consulted a layman or another attorney about redrafting the will.

But even giving Harvie's testimony its full face value, at most it shows that Mrs. Livesay was merely considering rewriting her will at the time stated. Since neither of the attorneys recommended to her by Harvie testified, it is safe to assume that she did not consult either in regard to rewriting her will. Nor is there any other evidence that she ever took any steps toward rewriting or revoking the will which Mr. Fussell drew for her.

To summarize the appellee's case: We have conclusive evidence of the testatrix's deep affection for her adopted granddaughter, continuing over a long period and down to the testatrix's death; repeated declarations of the testatrix before the execution of the will of her intent to leave all of her property to this granddaughter; repeated declarations of the testatrix subsequent to the making of the will, and only a short time before her death, that such a will had been written, was in existence, and was still in her possession; the entire lack of evidence of any cause or reason for the testatrix to have made a change in this testamentary disposition of her property; and conclusive proof of the lack of affection on the part of the testatrix for her next of kin, the appellants, or any of them. In our opinion this is amply sufficient to support the conclusion that the testatrix did not destroy her will with the intent to revoke it, but that on the contrary it was legally in existence at the time of her death and should be established. See *Jackson* v. *Hewlett, supra.*

The decree appealed from is

*Affirmed.*