# Richmond

ELOISE BLALOCK, ET ALS. V. CHARLES H. RIDDICK, EXECUTOR
OF THE ESTATE OF CORA PRESCOTT RANDALL,
DECEASED, ET ALS.

April 21, 1947.

Record No. 3183.

Present, Holt, C. J., and Hudgins, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*W. C. Pender*, for the plaintiffs in error.

*James G. Martin & Son*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Cora Prescott Randall, a resident of the city of Norfolk, died on July 27, 1945, and on the same day a paper purporting to be her last will and testament was admitted to probate *ex parte* by the clerk of the circuit court of that city.

Certain of the decedent's next of kin appealed from the clerk's order of probate to the Circuit Court of the city of Norfolk, which, under Code, sec. 5257, ordered a trial by a jury to determine whether the paper in question was the

will of the decedent. There was a verdict that the document was the true will of the decedent which the trial court sustained. Accordingly, it entered a final order admitting the paper to probate, and to review this the present writ of error was allowed.

Charles H. Riddick, one of the defendants in error, has moved to dismiss the writ of error as having been improvidently awarded, on the ground that certain of the nonresident beneficiaries were not served with notice of the application to the judge of the trial court for a certification of the record. A consideration of this motion necessitates a somewhat detailed statement of the proceedings below.

The paper was admitted to probate by the clerk on July 27, 1945, under Code, sec. 5249, as amended. On December 19, within the six-month period specified in the statute, and on motion of certain of the decedent's next of kin, the clerk entered an order allowing an appeal from his order of probate, returnable to the next term of his court.

On the opening day of the next term of court, January 14, 1946, an order was entered docketing the appeal. It recited that notice of the appeal had been served on "the proponent, Charles H. Riddick," he being the executor named in the purported will and the residuary devisee and legatee as well.

The record also discloses that on February 19 and 20 notice of the appeal was served personally on the remaining named beneficiaries who were within the jurisdiction.

On February 20 the court entered an order of publication against the remaining named beneficiaries, other than the contestants, all of whom were nonresidents. This order was duly published and matured.

The case was tried on June 26, 1946, with the result stated. Some of the beneficiaries, both resident and nonresident, were present in person at the trial, but only the contestants and Charles H. Riddick, the executor and residuary beneficiary, were represented by counsel.

On August 14, 1946, counsel for the contestants presented to the judge of the trial court for authentication a transcript

of the evidence, the instructions granted and refused, and the other incidents of the trial. Counsel for Riddick objected to the certification on the ground that while the resident beneficiaries and parties in interest had been personally served with notice of such application, the nonresident beneficiaries, other than the contestants, had not been so served or given any such notice.

Notwithstanding such objection, the judge of the trial court certified the record which, on the same day, was filed in the clerk's office.

We are asked to dismiss the writ, because, it is said, these nonresident beneficiaries are "indispensable parties" to the proceeding, to whom notice of the time and place of the application to the judge of the trial court for a certification of the record must be given under Code, sections 6252, 6253, and Rule 21 of the appellate court.

The contestants insist that the beneficiaries were not necessary parties to the probate proceeding, and that it was not required that they be given notice of an application for the certification of the record. However, they say, even if such beneficiaries be necessary parties, the entry and publication of the original order of publication against the nonresident beneficiaries dispensed with the necessity of a notice to them of an application for the certification of the record.

A reading of the pertinent statutory provisions shows that after an appeal from a clerk's order of probate has been perfected either of two courses may be pursued:

(1) The trial court may admit the will to probate *ex parte*, as the clerk has the right to do. It may "hear and determine the matter as though it had been presented to the said court in the first instance." (Code, sec. 5249.) It may, "without summoning any party, proceed to probate and admit the will to record, or reject the same." (Code, sec. 5259.)

When this procedure is followed there are no parties to the proceeding other than the proponent or proponents. Under Code, sec. 5259, "a person interested, who was not a party to the proceeding, may proceed by bill in equity to impeach or establish the will."

(2) On the other hand, the court may, in an *inter partes* proceeding, inquire whether the paper should be admitted to probate.

By the terms of Code, sec. 5249, it may, "At any time after such appeal is allowed," "make any such order for protection of the parties interested * * * as might have been made had the matter been originally presented to the court."

. Under Code, sec. 5253, the proponent may have process issued against "any person interested," requiring him to appear and show cause why the will should not be probated.

As provided in Code, sec. 5254, the court "to which a will is offered for probate, or into which the question of probate is removed by appeal or otherwise, may cause all parties interested in the probate to be summoned to appear on a certain day."

Code, sec. 5255, provides: "Any person interested in such probate may be summoned, or proceeded against, by order of publication; * * * ."

Code, sec. 5256, provides: "When all the persons interested in such probate shall be properly convened by such summons or order of publication, * * * or shall otherwise appear as parties, the court shall proceed to hear the motion for such probate."

In the case before us the lower court followed the second course of procedure. It directed that all of the interested parties, other than the contestants, be brought before the court. The beneficiaries within the jurisdiction were served with process, and those beyond the jurisdiction—the nonresidents—were proceeded against by an order of publication.

Having thus been made parties to the proceeding the non-resident beneficiaries were entitled to the same consideration as like parties in like proceedings. They were entitled to notice of the application for a certification of the record, unless that be dispensed with by statute.

Code, secs. 6069 and 6070, provide for the entry and publication of an order of publication against nonresident defendants.

Code, sec. 6071, provides that when such order of publica-

tion shall have been properly published for the required length of time, "no other publication, or notice, shall be thereafter required in any *proceeding in court,* * * * unless specially ordered by the court as to such defendants". (Emphasis added.)

If the original order of publication in the present case is found to have been in proper form, we are of opinion that it dispensed with the necessity of giving the nonresident beneficiaries notice of the application for a certification of the record. Such certification, we think, is a "proceeding in court" within the meaning of section 6071.

But it is argued that the order of publication here is fatally defective because it directed the nonresident defendants to appear *"in the Clerk's Office of this Court* and do whatever may be necessary to protect their interests." (Emphasis added.) It is argued that the order should have been returnable to the court instead of to the clerk's office.

There is no merit in this contention. Code, sec. 6070, provides that the order of publication "require the defendants * * * *to appear* within ten days after due publication thereof and do what is necessary to protect their interests." (Emphasis added.) Aside from the fact that the statute does not in terms require the place of appearance to be stated, the caption of the order before us shows the style of the suit and the court in which it is pending. This gives the parties sufficient notice where they must appear, and the words "in the Clerk's Office of this Court" are mere surplusage and may be disregarded.

Again, it is said that the order of publication is fatally defective because it was not entered within the six months allowed by Code, sec. 5249, for an appeal from the clerk's order of probate.

But none of the sections prescribing how interested parties may be summoned or convened requires that that step be taken within the six months allowed for an appeal from the clerk's order of probate.

Code, sec. 5249, permits an appeal by "any person interested" within six months after the entry of the clerk's

order of probate. Upon the application for such appeal the clerk is required to "enter forthwith" "an order allowing such appeal." When this is done the appeal is perfected. Convening the other interested parties before the court is accomplished after the appeal has been perfected.

The motion to dismiss is overruled.

We turn then to the merits. Cora Prescott Randall, a member of the colored race, a widow, about sixty-five years old, had accumulated an estate consisting of both real and personal property amounting to about $12,000. She lived alone in one of the houses which she owned. She had no children and her nearest relatives were her brothers, sisters, nieces and nephews. All of these were nonresidents of Virginia, some living in Chicago and some in South Carolina.

In February, 1944, Mrs. Randall employed L. A. Howell, a reputable attorney of her race, to prepare her will. She expressed to her attorney some distrust of her nearest relatives and for that reason directed that he prepare the will in duplicate. After this had been done she executed both copies, in the presence of the necessary attesting witnesses, on February 25, 1944. She retained the original copy and left with Howell, her attorney, the executed carbon copy.

On July 7, 1945, Mrs. Randall suffered a stroke which rendered her unconscious. She was removed to a local hospital where she died on July 27.

After Mrs. Randall's death, despite a diligent search, the original copy of the will which she had retained in her possession could not be found. The pivotal question presented to the lower court was whether the duplicate or carbon copy of the will, executed and attested in due form and left by Mrs. Randall with her attorney, should be admitted to probate.

Under the terms of the paper offered for probate several relatives of the decedent (the contestants) were left comparatively small portions of the estate. After stated bequests and devises to the church of the testatrix, and to certain of her relatives and friends, the residuum of the

estate was devised and bequeathed to Charles H. Riddick who was named as executor.

While the precise matter of the probate of a duplicate copy of a will has not been previously presented to this court, the underlying governing principles are well settled.

Where a will has been executed in duplicate, and a copy has been retained by the testator and a copy left in the custody of another person, if the copy retained by the testator cannot be found after his death, there is a rebuttable presumption that he has destroyed his copy for the purpose of revoking the will. Since the revocation of a will necessarily revokes a copy thereof, the copy left in the possession of the other person may not be admitted to probate, unless or until the proponent proves that the copy retained by the testator was not destroyed by him *animo revocandi*.

The subject was recently before the highest court of North Carolina in *In re Wall's Will*, 223 N. C. 591, 27 S. E. (2d) 728, in which many of the leading authorities are collected and discussed. The circumstances there were somewhat like those in the case before us. The will had been executed in duplicate, the testator taking the original and leaving an executed copy with the attorney who had prepared the document. The testator kept his copy of the will, along with his other valuable papers, in a locked buffet drawer. After his death this drawer was found unlocked and the original copy of the will gone. It was never found. The executed carbon copy was offered for probate.

In speaking of the controlling principles the court said (27 S. E. (2d), at page 729): "The rule generally followed by courts where the probate of duplicate wills has been considered is that where the duplicate copy retained by the testator is not produced or its absence satisfactorily accounted for, the other copy may not be admitted to probate as the testator's last will and testament, for the reason that the presumption of revocation would arise from proof of the possession of the paper by the testator before his death and its unaccounted for absence thereafter, and the revocation of the duplicate copy retained by the testator would

necessarily constitute a revocation of the copy in the custody of another person."

The same reasoning was applied in *In re Bates' Estate*, 286 Pa. 583, 134 A. 513, 48 A. L. R. 294, where it was held that the fact that the will was executed in duplicate did not alter the rule that a will left in the custody of the testator, which cannot be found after his death, is presumed to have been intentionally destroyed *animo revocandi*. The court further pointed out that while the executed duplicate copy sufficiently proved the contents of the copy retained by the testator, it did not, of course, prove that the latter copy was still in existence and had not been destroyed by him.

Other authorities on the subject are collected in an annotation in 48 A. L. R. 297.

And, as the court further said in *In re Wall's Will*, *supra*, (27 S. E. (2d), at page 731), the presumption of revocation arising from the nonproduction of the testator's copy of the will is "a rebuttable one." It is "for the jury to determine from all the evidence whether or not it had been destroyed by the testator with intent to revoke, the burden of proof being upon the propounder to establish the will and hence to show that its loss or destruction was not by his act or procurement."

See also, 68 C. J., Wills, sec. 758, p. 992; *Idem*, sec. 759, p. 994, and cases there cited.

It will be observed, then, that the problem presented by the offer of probate of a duplicate copy of a will, the original of which has been retained by the testator and cannot be found after his death, is essentially one of establishing the existence of a will, known to have been executed and the contents of which are proven, which is last traced to the testator's possession and is not found on search after his death.

Cases of this latter character have several times been before this court. Among the latest of these are *Gibbons* v. *Rew*, 164 Va. 339, 180 S. E. 153; *Shultz* v. *Jones*, 168 Va. 24, 190 S. E. 91; *Bowery* v. *Webber*, 181 Va. 34, 23 S. E. (2d) 766; *Tate* v. *Wren*, 185 Va. 773, 40 S. E. (2d) 188.

The pivotal issue in such cases is whether the evidence adduced by the proponents is sufficient to overcome the presumption of revocation.

What degree of proof is required to overcome the presumption of revocation and establish the existence of a will, duly executed and left in the custody of the testator and not found after his death, is a subject on which the authorities are in conflict. Some courts take the view that a mere preponderance of the evidence is sufficient.

In *Wright* v. *Wright*, 124 Va. 114, 127, 97 S. E. 358, we held that a mere "preponderance of evidence" was not sufficient.

In *Gibbons* v. *Rew, supra, Shultz* v. *Jones, supra,* and *Bowery* v. *Webber, supra;* we held that proof of the existence of the lost will must be "strong and conclusive." In *Tate* v. *Wren, supra* (185 Va., at page 787), we quoted with approval the statement in Harrison on Wills and Administration, Vol. 1, p. 278, that "In cases of lost or destroyed wills, the court requires the clearest evidence to establish the same."*

Whether the evidence offered meets this test is for the trier of the facts below, either the jury or the trial court, as the case may be. *Gibbons* v. *Rew, supra.*

In support of their motion for the probate of the executed duplicate copy of the will, the proponents offered evidence which tended to show that the testatrix had never indicated any desire to change or revoke the will as prepared by her attorney and executed by her in duplicate. From this, they argue, the jury had the right to infer that the original copy of the will had not been destroyed by the testatrix with an intention to revoke it, but was merely misplaced or lost.

Moreover, the proponents offered evidence which tended to show that the testatrix kept her valuable papers in a chest

---

*For the similar high degree of proof necessary to establish the existence and contents of lost deeds and wills generally, see *Dunnavant* v. *Dunnavant*, 120 Va. 301, 307, 91 S. E. 138; *Branham* v. *Clinchfield Coal Corp.*, 123 Va. 346, 349, 350, 96 S. E. 761; *Wilburn* v. *Wheeler*, 179 Va. 604, 606, 607, 19 S. E. (2d) 677, 678; *Peatross* v. *Gray,* 181 Va. 847, 860, 27 S. E. (2d) 203, 209, 210.

under lock and key; that during her last illness certain of the contestants, who occupied the decedent's home during her last illness, had entered the chest and examined its contents; and that after the decedent's death all of her valuable papers, including paid-up building and loan association stock, deeds to her properties, insurance policies and bankbooks, were found in the chest. Since the original copy of the will was not found there, the proponents argue that the jury had the right to infer that one of the decedent's relatives had found the will, had read it, and upon being disappointed at its provisions had destroyed or was unlawfully suppressing it.

Under these circumstances, the proponents say, the jury's verdict warranted the probate of the duplicate copy of the will.

The contestants contended that since the original copy of the will was retained by the testatrix, and was not found after her death, the presumption was that she had destroyed it with an intention of revoking it; that the proponents did not produce sufficient evidence to overcome this presumption; and that the evidence relied on by the proponents did not sustain their contention that one of the testatrix's disappointed relatives had abstracted the will from its place of safekeeping and had destroyed or was suppressing it. Hence, they say, the copy of the will should not have been admitted to probate.

In other words, the contestants contended in the lower court that the evidence was insufficient to sustain the jury's verdict and the judgment of the lower court admitting the paper to probate. The same contention is made before us.

Under the view we take of the matter it is unnecessary that we pass upon the sufficiency of the evidence. We are of opinion that the judgment must be reversed on the contestants' assignment of error that the court erroneously excluded from the jury the consideration of certain evidence offered by the contestants which was material to the issue presented.

It will be observed that the main issue was whether the

testatrix had destroyed, with a purpose of revoking it, the original copy of the will which she had retained in her possession, or whether it was still in existence at the time of her last illness.

As has been said, the proponents produced evidence which tended to show that the testatrix had never indicated to any one, and especially to her attorney who was an intimate friend and attended to all of her affairs, any desire or intention to change or revoke the will.

To meet this issue the contestants offered the testimony of Hattie L. Chatman who testified that she was and had been an intimate friend of the testatrix for twenty-five years, and that on occasions the testatrix had discussed her (the testatrix's) affairs with her (the witness).

The contestants then proposed to show by this witness that on two occasions shortly before the testatrix's last illness, the testatrix had told the witness, in substance, that recently she (the testatrix) had been very much displeased with Riddick's attitude toward her (the testatrix); that he had spoken disrespectfully to her (the testatrix) when the latter had refused to make him a loan. According to the witness the testatrix said: "I am glad he showed his colors, and he will never get anything I have got."

On the objection of counsel for the proponents this testimony was excluded from the jury upon the theory that it tended to prove "undue influence" of Riddick over the testatrix, which, they say, could not be established by the declarations of the testatrix, under the decision of this court in *Core* v. *Core*, 139 Va. 1, 7, 124 S. E. 453.

But this evidence was not offered for the purpose of showing Riddick's undue influence over the testatrix. As counsel for the contestants plainly stated to the court below, it was offered for the purpose of showing that the testatrix had changed her mind with respect to her intended gift to Riddick, the main beneficiary in the will. It tended to show that for that reason she had destroyed the will which she had made in his favor and intended to write another. It was quite pertinent to the crucial issue before the jury.

■ In *Jackson* v. *Hewlett*, 114 Va. 573, 576 *ff.*, 77 S. E. 518, we held that where the due execution and contents of a will are admitted or clearly established, but it cannot be found upon the death of the testator, and the cause of its disappearance is unknown, the declarations of the testator subsequent to the execution of the will are admissible to negative the presumption that he had destroyed the will with the intent to revoke it.

■ The converse is, of course, true. Declarations in conflict with the terms of the purported will are admissible to strengthen the presumption that it has been destroyed with the purpose of revoking it. *Tate* v. *Wren, supra* (185 Va., at page 783).

■ We are of opinion that the trial court erred in excluding this evidence from the jury.

On a retrial of the case we think that the jury should be more fully instructed on the issues before them than was done at the former trial. They should be told of the presumption resulting from the failure to find the copy of the will left in the possession of the testatrix, the nature of such presumption, and the burden and degree of proof required to overcome it, which we have outlined.

The judgment complained of is reversed and the case is remanded for a new trial in accordance with the principles here laid down.

*Reversed and remanded.*