618 P.2d 386

James **BARNGROVER,**
Opponent–Appellant,

v.

The **ESTATE** of Anna D. **BARNGROVER,** Deceased,
Petitioner–Appellee.

No. 4407.

Court of Appeals of New Mexico.

Oct. 9, 1980.

Leo C. Kelly, Albuquerque, for opponent–appellant.

Brian Willett, Jones & Waits, Albuquerque, for petitioner–appellee.

## OPINION

HERNANDEZ, Judge.

Proponents petitioned for formal probate of a photocopy of the purported last will of

Anna Barngrover. They alleged that the original instrument was mislaid or lost by decedent before her death. The petition was opposed by James Barngrover, the decedent's son. The trial court's decision reads as follows:

### FINDINGS OF FACT

1. The deceased executed a will in Iowa and a copy has been produced for probate.
2. The will is lost or misplaced even though diligent search and inquiry has been made for it.
3. The deceased never revoked nor changed the will, nor had any intention to do either.
4. The document submitted for probate (the copy of the deceased's will) is the last will and testament of the deceased, duly made, and is in all respects in proper form to be admitted to probate.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of this action.
2. The deceased died testate and the document presented for probate is her last will and testament.
3. The document presented for probate should be admitted to probate.

The appellant alleged three points of error:

POINT I : The court erred as a matter of law in concluding that the will of Anna D. Barngrover was lost.

POINT II : No evidence was presented to support a finding that the will of Anna D. Barngrover was lost.

POINT III : The evidence presented by the proponent of the will was insufficient to support a finding of non-revocation.

As can be seen, appellant's second and third points of error go to the substantiality of the evidence to support the trial court's second, third and fourth findings of fact. The first point of error goes to the correctness of the legal conclusion to be drawn from such findings. It is not necessary to consider each of these points separately.

The pertinent facts are these: Anna D. Barngrover, the testatrix, was a widow. The appellant James O. Barngrover is her son. Mary E. Barngrover is the divorced wife of James. Terry Barngrover and Virginia (Barngrover) Thompson are the children of James and Mary. On September 6, 1973, Anna executed her Will at Burlington, Iowa. By her Will, Anna bequeathed $1,000.00 to an old friend and neighbor Carl Piel. The remainder of the estate was divided into four equal shares; one share to James, another to Mary, another to Terry and the last to Virginia. In the Spring of 1977 Anna decided to move to Albuquerque, she sold her home and furnishings and went to the office of Mr. R. R. Beckman, her attorney, and obtained the copy of her will. Anna had worked for Mr. and Mrs. Beckman for almost forty years and Mr. Beckman had represented Anna and her husband for that period of time. Mr. Beckman testified that Anna, a Roman Catholic, never did approve of her son's divorce. She was very close to Mary and her two grandchildren. They paid a lot more of attention to her than her son. Her relations with her son were not close. At the time she came to pick—up her Will she did not indicate that she had any intention of revoking it. Anna and her husband had spoken to the members of their family about their Will and about their intention of dividing what they had into four shares for their son, Mary and the two grandchildren. Anna's husband died in March 1973. James testified that his mother came to live with him and his wife after she moved to Albuquerque. He further testified that he agreed to give her room and board for one year in exchange for her Ford automobile. Anna kept all of her valuable papers in a strong box in her room. The box was never locked. James testified that his mother had made all of the arrangements for her burial in Iowa and told him that there was $1,200.00 in the strong box to cover the costs. After her death on April 2, 1978, James took the money and paid the expenses, including his own to go back to the funeral. He also looked for her Will in the strong box and in

all of the rest of her belongings but could not find it. A search was also made in Burlington at the banks where Anna had deposits and inquiries were made at the County Clerk's office but the Will was never found.

The law governing situations such as this is as follows:

[I]n addition to accounting for non–production of the original instrument, the proponent of a missing will must prove its due execution, its contents, and facts or circumstances showing its nonrevocation. [Citations omitted.] The proponent must prove his case by evidence that is clear, satisfactory, and convincing, but it need not be free from doubt. [Citations omitted.]

It will be presumed that the instrument was destroyed by the testator with the intention of revoking it if the proponent fails to give an explanation for the absence of a will which was in the testator's possession or in a place to which he had ready access. *Perschbacher v. Moseley,* 75 N.M. 252, 403 P.2d 693 (1965).

"It is the function of the factfinder to weigh the evidence and decide on the credibility of witnesses." *Fierro v. Murphy,* 85 N.M. 179, 510 P.2d 112 (Ct.App.1973). "The presumptions are in favor of verdicts and the facts are to be viewed in the aspect most favorable to the prevailing party. We will indulge all reasonable inferences in support of the verdicts, disregarding all inferences or evidence to the contrary." *Mascarenas v. Gonzales,* 83 N.M. 749, 497 P.2d 751 (Ct.App.1972). Applying foregoing principles, it is our opinion that there was sufficient evidence to permit the district court to draw a reasonable inference against the presumption, and substantial evidence to support the judgment. We affirm.

SUTIN, J., specially concurring.

WALTERS, J., concurring with SUTIN, J.

SUTIN, Judge (specially concurring).

This is an appeal from a judgment in the Estate of Anna D. Barngrover in which the proponents of the Last Will and Testament of Anna D. Barngrover prevailed. A photocopy of the original will, which could not be found, was admitted to formal probate.

The trial court found:

\* \* \* \* \* \*

3. The deceased never revoked or changed the will, nor had any intention to do either.

The evidence most favorable to the court's finding is:

Anna D. Barngrover is the testatrix. Her son is James Barngrover. He was the sole heir at law of Anna. Mary E. Barngrover is the divorced wife of James. James and Mary had two children: Terry Barngrover and Virginia (Barngrover) Thompson, grandchildren of Anna. Virginia was the proponent of the will.

Anna duly executed a will in duplicate on September 6, 1973 in which each of those mentioned were willed a one–fourth interest in her estate. A neighbor was willed $1,000.00.

In mid 1977, Anna came to New Mexico from Burlington, Iowa to live with James. Before coming here, she obtained the original will from her lawyer and left the duplicate in his possession. Anna never indicated to her lawyer that she had any intention of revoking her will. In her lawyer's opinion, she would know that if she burnt the will she would destroy it. She kept her will in a strong box. She sold her home and furniture. She moved her personal effects to James' home but it is unknown whether she left any personal effects in Burlington. She died in New Mexico April 2, 1978. During this interim period–mid 1977–April 2, 1978–she lived in a bedroom in James' home. She had the strong box with a lock but it was never locked. A diligent search was made in James' home and in Burlington, but the will could not be found.

Anna never mentioned anything to Virginia about destroying or changing her will. Anna was intelligent, very thorough and in

excellent health, but quiet and secretive. She never indicated she wanted to be taken to an attorney. James agreed to give her a year's rent, room and board for Anna's old Ford. On several occasions, Anna told Virginia she was upset with James and afraid of him. She provided for Virginia and others in the will because she worried that James would get it all and the others nothing. All of Virginia's life, her grandparents told her they wanted a distribution of four equal shares. Anna loved Mary. During the time that Anna and Mary lived in Burlington, Anna contacted Mary every day, knew that Mary had a floating tumor, took her to Iowa City all of the time, and wanted to be sure Mary was taken care of. The neighbor mentioned in the will was like a son to Anna. Anna was born a catholic and did not approve James' divorce. James abandoned his family in the sense that he did not properly support his family and this did not meet with Anna's approval. James had been in a lot of conflict with the law over a period of time and no close relationship existed.

The court asked Virginia this question to which she gave this answer.

Q. In all fairness to everybody concerned in this matter, and in the memory of your grandmother, you have no reason at all to believe ... that your grandmother revoked her will?

A. There's no reason I believe she revoked it, no.

At the close of the case, the trial court expressed its views at great length, a matter of importance in cases of this nature. It has been said:

... Whether this proof is sufficient is ordinarily addressed to the sound discretion of the trial judge, and since he sees the witnesses and is in close touch with the facts, his conclusion on this question will not be disturbed unless abused.

*Goodale v. Murray*, 227 Iowa 91, 289 N.W. 450, 126 A.L.R. 1121, 1134 (1940).

Intentional revocation of a will is defined in Section 45–2–507, N.M.S.A. 1978 of the Probate Code. It provides in pertinent part:

A will or any part thereof is revoked by:

\*     \*     \*     \*     \*     \*

C. being burned, torn, cancelled, obliterated or destroyed with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction.

The court reasoned that if Anna had purposely destroyed or thrown away the will, she would have the mental capacity to do that with a revocatory intent; but, she had no such intent because she was acquainted with a lawyer, had made a will prior to the one in controversy and could have gone to a lawyer in Albuquerque or called her Burlington lawyer. In fact, there was no evidence that Anna did any overt act toward carrying out any revocatory intent.

The court further said:

[U]nder the circumstances of this case, considering the number of devisees, which I think is very important, and the relationship of these devisees, these divisees are the natural bounty [except for the mother and neighbor] ... and *it's impossible for me to believe that Mrs. Barngrover, after having obtained her will from her attorney would have completely destroyed it intending to revoke the will* .... [Emphasis added.]

I agree. I commend this forthright determination, based in part upon its examination of witnesses. In its view of the sufficiency of the evidence on intentional revocation, no indication of an abuse of discretion appears.

In Burlington, Iowa, Anna was in possession of the original of her Last Will and Testament. The rule is established that when a will is shown to have been made and left in the custody of Anna or in a place to which she has ready access, if it cannot be found after her death, the presumption is that Anna destroyed it with intention to revoke unless Virginia, the proponent, gives an explanation for the absence of the will. *Perschbacher v. Moseley*, 75 N.M. 252, 403 P.2d 693 (1965). *Perschbacher* cites as its

authority for this rule, *Blalock v. Riddick*, 186 Va. 284, 42 S.E.2d 292 (1947); *Drew v. Hawley*, 164 Neb. 141, 82 N.W.2d 4 (1957); 3 Page on Wills (Bowe–Parker Rev.) § 29.-163; Annot. *Proof of nonrevocation in proceedings to establish lost wills*, 3 A.L.R.2d 950 (1949).

*Blalock* is directly in point. The testatrix had her will prepared in duplicate. Both were executed in the presence of the necessary attesting witnesses. She retained the original and left the executed carbon copy with her attorney. After the death of testatrix, despite a diligent search, the original of the will which she retained in her possession could not be found. The pivotal question presented to the lower court was whether the duplicate or carbon copy of the will left with her attorney, should be admitted to probate. It was. The Supreme Court reversed, but solely on the exclusion of contestant's evidence. It stated the rule set forth in *Perschbacher*. The court held that a *rebuttable presumption* exists that the will was destroyed for the purpose of revoking it. The court said:

> ... Since the revocation of a will necessarily revokes a copy thereof, the copy left in the possession of the other person may not be admitted to probate, unless or until the proponent proves that the copy retained by the testator was not destroyed by him animo revocandi [intent to revoke.] [42 S.E.2d 295.]

"But this is a presumption of fact only. It may be overcome by evidence, circumstantial or otherwise, to the contrary; and declarations of the testator may be shown for this purpose." *Drew, supra.* [82 N.W.2d 7.]

*Blalock* discussed *In re Wall's Will*, 223 N.C. 591, 27 S.E.2d 728 (1943). *Walls* was also a duplicate will case, the original possessed by the testator and the duplicate left with the lawyer. The duplicate will was admitted to probate. The Supreme Court reversed but solely on an erroneous instruction given to the jury.

*Walls* also holds that a presumption of revocation is a presumption of fact. With reference to this presumption, *Walls* said:

> ... But as soon as the circumstances attendant upon the disappearance of the paper are made to appear, the presumption loses its potency and the issue becomes one for the jury.... [27 S.E.2d 731.]

In the instant case, the attendant circumstances were presented. Virginia gave an explanation for the absence of the will. The proponent of the will met the burden, to the satisfaction of the trial court, of proving the nonexistence of the presumed fact of revocation. See Rule 301, N.M.R. Evid., N.M.S.A. 1978.

We are only concerned with whether Virginia has fulfilled her burden to prove non–revocation of the will.

Under *Perschbacher*, Virginia must prove facts and circumstances showing non–revocation of the will "by evidence that is clear, satisfactory, and convincing, *but it need not be free from doubt.*" [Emphasis added.] [75 N.M. 254.] The authority cited for this rule is *In re Lawrence's Estate*, 251 Iowa 305, 100 N.W.2d 645 (1960). Previously, the rule in Iowa was that non–revocation in the case of a lost will must be overcome "by evidence strong, positive and *free from doubt.*" This heavy burden was overruled. *Goodale, supra.* What is important to note is that "free from doubt" was likened unto "beyond a reasonably doubt." We can readily say that the rule in New Mexico is that the proponent must prove the non–revocation of the will "by evidence that is clear, satisfactory, and convincing, but she does not have to prove non–revocation beyond a reasonable doubt."

Evidence is clear, satisfactory and convincing when the mind of the fact finder is not confronted with a question mark on the vital issue, leaving in the fact finder's mind an abiding conviction that the evidence which tilts the scales in the affirmative on that issue is true when weighed against that in opposition. *Lumpkins v. McPhee*, 59 N.M. 442, 286 P.2d 299 (1955); *Hockett v. Winks*, 82 N.M. 597, 485 P.2d 353 (1971); *In re Sedillo*, 84 N.M. 10, 498 P.2d 1353 (1972). The magnet of this rule on appeal is an

expression of the abiding conviction of the court below. This important event occurred.

*Goodale* says:

... While it is highly proper that one who seeks to establish as a valid will, one that is lost or destroyed and unrevoked, should be required to produce evidence that is clear, convincing and satisfactory, *yet the burden put upon him should not be prohibitive. Wills are carelessly lost and misplaced and a reasonable opportunity should be given to establish such a will.* Likewise wills are sometimes suppressed or destroyed for an ulterior purpose. The defeat of that purpose ought not to be made too difficult or impossible.... [Emphasis added.] [126 A.L.R. 1138.]

This is not to say that James, with whom Anna lived, who had access to the strong box in Anna's room, destroyed the will, if one was in the strong box. "It cannot be presumed that the destruction has taken place by any other person without his [testator's] knowledge or authority, for that would be presuming a crime." *Stetson v. Stetson*, 200 Ill. 601, 66 N.E. 262, 265, 61 L.R.A. 258 (1903).

Virginia established non–revocation of the will "by evidence that is clear, satisfactory and convincing."

In the Brief–In–Chief James did not set forth all of the testimony most favorable to the court's finding of non–revocation. He relied primarily upon his own testimony. It might be sufficient to support revocation if it stood alone. One significant fact is that Anna came to New Mexico to live with her son, not, of course, to be required to pay for room and board with an old Ford. If, in her will, she left James nothing, a serious question might have arisen. However, there was no evidence that she loved her son, but she treated him equally with those whom she did love. The facts and circumstances do not favor the position of a father who seeks the entire estate by intestacy to the exclusion of his children and their mother. When litigation is fraught with family discord and strained relations, noted by the judge below and by this Court on appeal, the bell tolls for one who appears to have wronged others who compose the family.

WALTERS, J., concurring.