COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, AtLee and Raphael
Argued at Norfolk, Virginia

JOHN F. GLYNN AND
  KEVIN J. GLYNN

v.      Record No. 0327-22-1

OPINION BY
JUDGE ROBERT J. HUMPHREYS
MARCH 21, 2023

VITA KENNEY, EXECUTRIX OF THE
  ESTATE OF PATRICIA LYNCH-CARBAUGH

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

M. Bradley Brickhouse (Ashley B. Horbal; Oast & Taylor PLC, on
brief), for appellants.

Jana Nattermann (Erin K. DeBoer; Toscano Law Group, P.C.;
Anchor Legal Group, PLLC, on brief), for appellee.

Following a hearing on Vita Kenney's bill in equity to establish a lost will, the Circuit Court of the City of Virginia Beach ordered a copy of the last will and testament of Patricia Lynch-Carbaugh admitted to probate. John F. Glynn and Kevin J. Glynn, Lynch-Carbaugh's sons, now appeal, arguing that the circuit court erred by finding that Kenney rebutted the presumption that a missing will was revoked by clear and convincing evidence.

BACKGROUND

We state the facts in the light most favorable to the prevailing party below, in this case, Kenney, the proponent of the missing will. *See Edmonds v. Edmonds*, 290 Va. 10, 24 (2015). Patricia Lynch-Carbaugh died on March 17, 2021. On May 25, 2021, Vita Kenney, as executrix of her estate, filed a bill in equity to probate a copy of Lynch-Carbaugh's last will. Kenney alleged that Lynch-Carbaugh had validly executed a last will and testament on July 9, 2020, had

that will in her possession at her death, and therefore died testate.  Kenney further alleged that "the condition of" Lynch-Carbaugh's home prevented Kenney from locating the original will.  Kenney alleged that appellants were Lynch-Carbaugh's sole heirs at law and that a living trust established by Lynch-Carbaugh was the sole beneficiary of the will.

At the time of her death, Lynch-Carbaugh appeared to have difficulty maintaining her home.  Kenney introduced photographs and videos that showed the home "in disarray."  One witness testified that the home "looked like a shredder had gone through the house and littered documents all over the home."  Additionally, the home showed evidence of a rodent infestation and bottles filled with apparent human waste were found in the home.  Due to the condition of the home, Kenney had difficulty finding even the most essential objects of daily life, such as Lynch-Carbuagh's purse and car keys.  Kenney hired a professional remediation company to clean out Lynch-Carbaugh's home.

Attorney Donna Wilson prepared the will that Kenney sought to establish.  Wilson first prepared a will in 2018 for Lynch-Carbaugh, who then enrolled in a "maintenance program" that allowed her to update her estate planning documents at no additional cost.  Wilson met with Lynch-Carbaugh three times to update her documents.  Lynch-Carbaugh "had possession" of her will and other legal documents when she left Wilson's office and "would have kept [the documents] in her home" in between meetings.  Wilson revised Lynch-Carbaugh's documents "several times" to "make changes" to which "charities" would benefit, although Lynch-Carbaugh was "fairly consistent" with keeping friends as beneficiaries.  The most recent will was executed in July 2020.  The will contained a provision that "specifically disinherit[ed]" the Glynns "for reasons personal to [Lynch-Carbaugh] and known to them."  Lynch-Carbaugh did not contact Wilson after July 2020 to request changes to her documents or "share any reason" that "she wanted to revoke" her will.  Lynch-Carbaugh renewed her enrollment in the maintenance

program for the period of September 1, 2020 through August 31, 2021, and Wilson testified it "would be unlikely" that Lynch-Carbaugh would have gone to another attorney to make changes to her estate plan.

The Glynns moved to strike the evidence at the conclusion of Kenney's case-in-chief, arguing that the will had been in Lynch-Carbaugh's possession and that Kenney must therefore prove that Lynch-Carbaugh did not destroy the will. All that Kenney had proved, they argued, was that Lynch-Carbaugh lived in a "messy house." The circuit court denied the motion. The Glynns presented no evidence and renewed their motion to strike the evidence.

The Glynns argued that Lynch-Carbaugh repeatedly accessed her will to take it to Wilson for updates and that she kept "it safe" and "accessible." Moreover, she "had plans to go back and talk about it again" with Wilson, proving that "she was not certain on her estate plan," which had been changed more than once. The presumption of revocation applied, and Kenney had not overcome it with evidence showing only that the will "could have been chewed up by rodents," "could be lost," or that "it could still be" in the house. The Glynns also contended that merely not knowing what happened to the will, which was all that Kenney had proved, was not enough to overcome the presumption of revocation.

After argument by counsel, the circuit court found that Lynch-Carbaugh was in possession of the will at her death and emphasized that Lynch-Carbaugh had disinherited the Glynns. She "had a clear understanding" of how she wished to dispose of her assets, "and a very clear and well-established method" of "expressing those desires and intent" through "formally executed written documents such as" the disputed will. The circuit court thought it was unlikely that she would have revoked her will without consulting her attorney, especially because she had renewed her enrollment in the firm's maintenance program. Additionally, there was no evidence that showed that Lynch-Carbaugh indicated to anybody that she had destroyed or revoked her

will.  Furthermore, the circuit court extensively described the state of Lynch-Carbaugh's house.  The circuit court noted that the condition of the house "provides a very clear and understandable and rational explanation for why" the will "has been difficult to locate."

The circuit court found "by clear and convincing evidence that the proponent or the complainant in this case has established that the will was lost and that it was not destroyed with the intention to revoke it."  Accordingly, the circuit court denied the renewed motion to strike.

By final order of January 31, 2022, the circuit court ordered that the copy of the will presented by Kenney be admitted to probate and that Kenney be permitted to qualify as the personal representative of Lynch-Carbaugh's estate.  This appeal followed.

ANALYSIS

The Glynns make two arguments on appeal: first, that the circuit court erred as a matter of law by holding that a proponent of a missing will may overcome the presumption that a missing will was revoked despite offering multiple theories as to the cause of the will's absence.  Second, that the evidence was insufficient to establish by clear and convincing evidence that Lynch-Carbaugh did not intend to revoke her will.  We disagree with both arguments.

Under Virginia law:

> Where an executed will in the testator's custody cannot be found after his death there is a presumption that it was destroyed by the testator *animo revocandi*.  This presumption, however, is only *prima facie* and may be rebutted, but the burden is upon those who seek to establish such an instrument to assign and prove some other cause for its disappearance, by clear and convincing evidence, leading to the conclusion that the will was not revoked.

*Brown v. Hardin*, 225 Va. 624, 626 (1983) (internal citations omitted).  The proponent of the will "is not required to specifically prove what became of the missing will. . . .  Instead, the proponent is required to prove, by clear and convincing evidence, that the testator did not destroy the will with the intention of revoking it."  *Edmonds*, 290 Va. at 23.

- 4 -

I.  Multiple Theories

The Glynns first argue that, as a matter of law, the proponent of a missing will cannot overcome the presumption by clear and convincing evidence if the proponent offers multiple theories of the will's whereabouts.  The Glynns cite to *Harris v. Harris*, 216 Va. 716 (1976), to support their argument.  In *Harris*, the Supreme Court held that the proponent of a missing will failed to rebut the presumption when "other equally probable inferences favorable to the opponents could be drawn from the same evidence."  216 Va. at 720.  The Glynns argue that because Kenney offered multiple theories, from which "equally probable inferences" could be drawn, that *Harris* requires a *per se* rule that Kenney cannot meet her burden.  We disagree.

The Virginia Supreme Court has held, on multiple occasions, that the proponent of a missing will is not required to prove what happened to the will.  In *Brown*, the Court held that "it was not incumbent upon [the proponent] to prove . . . specifically what became of said will; and that [the proponent] only had to prove by clear and convincing evidence that [the testator] did not destroy the will with the intention of revoking it."  225 Va. at 637.  In *Edmonds*, the Court held that "a proponent of a missing will is not required to specifically prove what became of the missing will. . . .  Instead, the proponent is required to prove, by clear and convincing evidence, that the testator did not destroy the will with the intention of revoking it."  290 Va. at 23.

*Harris* stands for the proposition that the clear and convincing standard cannot be met by evidence that is capable of producing "equally probable inferences."  216 Va. at 720.  The fact remains, however, that the proponent is under no burden to prove *anything* regarding the whereabouts of the will.  The proponent's only burden in overcoming the presumption is to prove, by clear and convincing evidence, that the testator did not intend to revoke their will.  *See, e.g.*, *Edmonds*, 290 Va. at 23; *Brown*, 225 Va. at 626.  While the Glynns are correct that the clear and convincing standard cannot be met by equivocating evidence, Virginia law is clear that the

proponent of a missing will is simply "not required to specifically prove what became of the missing will." *Edmonds*, 290 Va. at 23.  In other words, the clear and convincing standard does not apply to the fate of the will, and there is no *per se* rule requiring a proponent of a missing will to offer only one theory regarding the fate of the will.[1]  As such, the circuit court did not err by holding that Kenney overcame the presumption despite Kenney offering multiple theories of the will's whereabouts.

## II.  The Sufficiency of the Evidence

The Glynns next argue that Kenney's evidence was insufficient to prove, by clear and convincing evidence, that Lynch-Carbaugh did not revoke her will.  We will only reverse a judgment for insufficient evidence if it is "plainly wrong or without evidence to support it." *Id.* at 18 (quoting *Atrium Owners Ass'n v. King*, 266 Va. 288, 293 (2003)).

The Supreme Court has defined clear and convincing evidence as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Brown*, 225 Va. at 637-38.  Accordingly, the question before us is whether there is evidence in the record to support a firm belief or conviction that Lynch-Carbaugh did not destroy her will with the intention of revoking it.  As the prevailing party below, Kenney is entitled to have this Court review the record and all reasonable inferences therefrom, in the light most favorable to her. *See Edmonds*, 290 Va. at 24.

Our Supreme Court has noted that "[t]he evidence presented by a proponent of a missing instrument will take different forms depending on the facts and context of each individual case." *Id.* at 23.  In some cases, courts have relied on the extrinsic statements of the testator made in the period between the execution of the will and death, reflecting their intentions consistent with

---

[1] The lack of certainty surrounding the fate of the will remains a relevant fact for the court to consider when determining whether the proponent has overcome the presumption.

those stated in the will. *See, e.g.*, *id.* at 26; *Brown*, 225 Va. at 636-37; *Tate v. Wren*, 185 Va. 773, 786 (1946). Courts have also considered the relationship between the testator and his or her would-be intestate heirs, including the absence of any evidence of a change in that relationship. *See Edmonds*, 290 Va. at 25; *Bowery v. Webber*, 181 Va. 34, 37 (1943). Additionally, though the testator is not required to prove what became of the missing will, courts have also given weight to the plausibility of the proffered explanation for the whereabouts of the missing will. *See Brown*, 225 Va. at 636.

These factors, however, are not exhaustive. For example, in *Edmonds*, the Supreme Court held that it was appropriate to rely on the content of prior wills as an indication of the testator's intent. 290 Va. at 25. The testator in *Edmonds* had excluded the intestate heir from his missing will as well as his two previous wills. *Id.* The Supreme Court held that the exclusion of the intestate heir in the previous wills made clear that the testator "did not want [the intestate heir] to be a beneficiary. . . . [T]here [was] no indication that he would want his property to pass through intestate succession under any circumstances." *Id.* The *Edmonds* Court also considered the logical steps the testator would have taken had he chosen to revoke his will. The Court noted that a copy of the testator's will was found among his "important papers" and that "had [the testator] intended to revoke the 2002 Will by destroying the original, it would have been logical that he would have removed the photocopy from his file of important papers." *Id.*

In this case, several factors indicated that Lynch-Carbaugh did not revoke her will. First, in her will, Lynch-Carbaugh explicitly disinherited her sons "for reasons . . . known to them." Although these reasons were not explained on the record, the explicit exclusions of her sons in her will indicated a clear desire that her estate not pass by intestacy; indeed, her lawyer testified that she was consistent that she wanted charities to inherit her estate. Read in the light most favorable to Kenney, this indicates that Lynch-Carbaugh, like the testator in *Edmonds*, did not

- 7 -

intend for her estate to pass to her sons. *See Edmonds*, 290 Va. at 25. Second, Lynch-Carbaugh was a subscriber to a legal services plan that she used regularly to update her estate planning. Had she sought to revoke her will, she likely would have used the legal services plan that she used to make changes to her previous wills. Just as the *Edmonds* Court considered the logical steps a testator would take if he had revoked his will, it was appropriate for the circuit court to consider what steps Lynch-Carbaugh would have taken had she revoked her will. Third, there was no evidence introduced of anything that might have happened to change Lynch-Carbaugh's mind regarding the disposition of her estate. Relatedly, the relatively short amount of time that passed between the execution of the will and Lynch-Carbaugh's death (less than one year), makes it unlikely that a substantial change in circumstances would have taken place that would have made Lynch-Carbaugh likely to have revoked her will. Finally, the condition of Lynch-Carbaugh's home provides a plausible explanation for the will's absence other than revocation. The will could have been destroyed by rodents, lost in the mass of documents, or taken by someone who had access to Lynch-Carbaugh's home after her death.

Accordingly, when taken as a whole, there is credible evidence in the record that supported the circuit court's conclusion that Kenney provided clear and convincing evidence that Lynch-Carbaugh did not revoke her will by destruction. Therefore, the circuit court did not err in finding that Kenney overcame, by clear and convincing evidence, the presumption that Lynch-Carbaugh revoked her missing will.

For the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*